# STRAFFORD,

## DECEMBER TERM, A. D. 1841.

---

## DESPATCH LINE OF PACKETS
### *vs.*
## BELLAMY MAN. COMPANY & Trustees.

A by-law of a corporation provided that any person chosen a director should cease to be one when he ceased to be a proprietor. *Held*, that this, by implication, rendered any one not a proprietor ineligible to the office.

If a corporation elect a person a director who is ineligible to that office, and permit him to act as such, the corporation will be bound by the acts which he performs, within the scope of the authority possessed by a director.

When the by-laws of a private corporation confer upon the directors power to act in behalf of the corporation, without special limitation as to the manner, a majority may act, within the scope of the authority given to the board, and bind the corporation, either where there is a consultation of all together, and a concurrence of a majority, or where there is a regular meeting at which all might be present, and a majority actually attend, and act by a major vote.

And where the act done at a meeting purports to be the act of the board, it may be presumed that it was the act of a majority, until the contrary is shown.

An agent of a corporation, appointed by the directors for the purpose of superintending and carrying on its business, has no authority, in virtue of such agency, to pledge or mortgage the machinery used by the company, for the security of a loan.

Where one made a promissory note, commencing, "I promise to pay," &c., and signed it with his own name, adding, "Agt. Bellamy Man. Co.," and at the same time executed a mortgage, in the name of the company, to secure the payment of it—*Held*, that the note would bind the company, as their promissory note, if the individual had authority at the time to execute the note, or if the transaction was subsequently ratified by the company.

A ratification of an act, done by one assuming to be an agent, relates back, and is equivalent to a prior authority. When, therefore, the adoption of any particular form or mode is necessary to confer the authority in the first instance, there can be no valid ratification except in the same manner.

The strict rule as to fixtures, that prevails between heir and executor, applies as between vendee and vender, and between mortgagee and mortgager.

Machines, and other articles essential to the occupation of a building, or to the business carried on in it, and which are affixed or fastened to the freehold, and used with it, partake of the character of real estate, become part of it, and pass by a conveyance of the land.

An engine used in a building, and which cannot be removed without taking down part of the building, is a fixture.

Loose movable machinery, not attached nor affixed, where it is used in prosecuting any business to which the freehold property is adapted, is not regarded as part of the real estate, or as an appurtenance to it.

An instrument under seal is not necessary to constitute a mortgage of personal estate.

An instrument under seal, executed by one acting as agent, purporting to convey real and personal estate, if it cannot lawfully operate as a conveyance of the real estate, for want of authority in the agent to execute a deed, may avail, as an unsealed instrument, for the conveyance of the personal property, if the principal has given authority to make such a conveyance, or has subsequently ratified it in a manner sufficient for that purpose.

A mortgage or pledge of the personal property of a corporation, by one undertaking to act as agent, may be shown to be valid, either by evidence of the acts of the corporation prior to the mortgage, from which an authority to make it may be inferred, or by subsequent acts, showing a ratification.

If one professing to be authorized, mortgage the personal property of a corporation in order to procure a loan, and the money obtained thereby come to the use of the corporation, and be retained by it, that will be evidence of a ratification of the mortgage.

If one summoned as trustee has in his hands the goods of the principal, he has a right to hold them to answer upon the process; and if they are taken from his possession by a wrong doer, that will not discharge him as trustee. But it may furnish ground for delaying the proceedings, until damages can be recovered.

A party who obtains the possession of goods by a trespass cannot be charged as trustee of the owner, to whom the wrong is done.

Foreign attachment, in which the Savings Bank for the county of Strafford was summoned as trustee. The action was commenced on the 24th day of March, 1837.

The plaintiff having elected to try the question of the liability of the Savings bank, as trustee, by the verdict of a jury, an issue was framed for that purpose.

It appeared, upon the trial, that on the 13th of January, 1837, Robert H. Palmer, assuming to act as the agent of the Bellamy Manufacturing Company in that behalf, made a promissory note in these terms—" For value received I

promise to pay the Savings Bank for the county of Strafford, or order, three thousand dollars in six months.

Robert H. Palmer, Ag't Bellamy M'f Co."

On the same day, in the name of the company, and as their agent, for the purpose of securing the note, he executed a mortgage of a " tract or parcel of land, with the buildings thereon, known as the Bellamy Print Works ; with all the bleaching, dyeing, printing, finishing and other fixtures, machinery, tools, buildings, and materials," on the premises.

Annexed to the deed was a paper, purporting to be a copy from the records of the directors of the Bellamy company, as follows : " At a meeting of the Directors of the Bellamy Manufacturing Company, duly held on the thirteenth day of January, 1837, it was voted, ' That Robert H. Palmer, Agent of the Bellamy Manufacturing Company, be authorized, and he is hereby authorized, to pledge, by mortgage, or otherwise, the real and personal estate now belonging to said Company, to the Dover Savings Bank, to secure them for a loan of three thousand dollars ; and also to assign and transfer to said bank any policy or policies of fire-insurance, now or hereafter to be effected on said property ; and also to transact any other or further business for the purpose of securing said loan.' "

The deed was duly recorded in the records of the town and of the county.

On the 16th of November, 1837, the trustees of the Savings bank appointed an agent to take possession of the property mortgaged, who did so on the same day, and had kept possession of the real and personal property from that time, except only that a steam boiler and ten copper rollers were attached, and taken out of his possession, in the manner hereinafter stated. Among the property of the company thus taken were one steam engine, weighing five tons, which was put into the building in which it was used before said building was finished, and could not be got out of said building without taking off some of the boards, but was not con-

fined in any other way; three steam boilers, set in bricks and mortar, which could not be removed without tearing down the brick work; one steam boiler, outside of the building, not set, weighing about ten tons; one calico printing machine, not fastened to the building in which it stood, in any way, and which might be removed without injury to any thing; one hand press for prints, which was let into the floor of the apartment in which it stood, and the floor boarded over a part of it, and which was also secured to the top of the apartment by small braces, and could not be removed without drawing the nails which fastened them, and taking up some of the floor boards; one cullender; one padding machine; four stoves and pipe; a lot of pails and tubs; a lot of cast iron steam pipe in joints, which were screwed together when in use, and passed through a partition, which pipe might be taken apart, put up and used any where else, and which was used to convey steam from the steam boilers before mentioned; two copper boilers, set in brick arches, which could not be removed without disturbing the brick work; eight or more copper rollers, or shells, engraved for printing, being hollow cylinders, made to fit and be used on mandrils of a certain number, the mandril on which these were used being a solid iron cylinder, connected with the calico printing machine. The shells could be put on and taken off at pleasure, and used in any printing factory, upon mandrils of the same number, with equal advantage.

It appeared further, that the Bellamy manufacturing company was incorporated on the 14th day of June, 1836, and at a meeting held on the 15th of July, 1836, accepted the act of incorporation, chose a chairman, and also a clerk, and elected A. W. Bell and J. W. Emery associates in said company.

At an adjourned meeting, on the 18th of July, 1836, a committee, appointed at the former meeting to draft by-laws, reported a code, which was then adopted by said company. The second article provided that there should be chosen by ballot, from the proprietors, at their annual meeting, a presi-

dent, who should *ex officio* be president of the board of directors, and three persons to serve as directors during the year, who should have power to appoint a clerk, to keep a record of their proceedings ; and who should jointly manage all the affairs of the corporation, and have power to appoint an agent or agents, and such other officers as they might determine ; but any person chosen a director should cease to be one when he should cease to be a proprietor. Other articles provided that the capital stock of the company should be divided into shares of $500 each, and for the issuing and the form of certificates of stock.

By the sixth article they had power to pass upon and allow all accounts and demands against the corporation which they should find just and reasonable ; to lay all assessments, and to exercise a general superintendence and control of the affairs of the company, and to appoint an agent or agents, and such other officers for carrying on the business of the company, as they might determine.

Whether any property had been purchased by the company, or any shares paid for by any person or persons, on any certificates of stock issued, before or at the meeting on the 18th of July, 1836, did not appear. At the last mentioned meeting James Haselton was chosen president, and Ira Haselton, Robert H. Palmer and J. W. Emery, directors, by ballot. At a meeting of the company held on the 15th of April, 1837, the directors reported that they had purchased the Bellamy print works for $16·000, agreeably to a deed from the proprietors of said works to the corporation, and it was voted that said deed be accepted.

It was proved that R. H. Palmer acted as the agent of said company in hiring and discharging laborers, buying wood, dye stuffs, &c., and in overseeing and superintending their works, and laborers, from their organization till their failure, in March, 1837 ; and that at a meeting of the stockholders, on the 19th of April, 1837, they passed a vote in the words following, viz.: " Voted, that in consequence of

the resignation of R. H. Palmer, as agent of this corporation, it is necessary that another agent be appointed to settle the affairs of the corporation"; and another person was appointed.

During the above mentioned period Palmer had the general management of the operations of the company's print works, purchased for the company new machinery, as they from time to time needed it to carry on their works, and sold such as became worthless, except for its materials; and he also procured the discount, at a bank, of many drafts of the company, drawn on Messrs. Whitwell, Bond & Co., of Boston, and by them accepted; and in one or two instances he gave notes in the company's name, or his own name, for materials purchased for the company.

On the 13th of January, A. D. 1837, R. H. Palmer and J. W. Emery met, on their private business, at the store of Palmer. Emery never was the holder of any stock in the company, and never had any interest in it. When he went into Palmer's store, at that time, Palmer told him he wanted to make a mortgage to the Savings bank, of the property of the Bellamy manufacturing company, to secure a loan he desired to get from them. Emery replied that he could not act, never having had any stock; but Palmer said he was chosen a director, and that it would make no difference, as the matters were all understood between them—that he had expected Mr. Ira Haselton, but that he had gone down east. Emery at last said he had no objection to look on. A blank book was procured, and Emery, at Palmer's request, wrote a form for the vote annexed to the mortgage, which was copied into the book by N. D. Wetmore, who was nominated by Palmer as clerk of the directors, and sworn to the faithful discharge of the duties of that office.

It appeared that Ira Haselton had been a stockholder in, and director of, said company, from the time of its organization—that he usually attended the meetings of the stockholders and directors of the company—that he did not attend any meeting of the stockholders or directors on the

Despatch Line of Packets *v*. Bellamy Man. Co.

13th of January, 1837, and had no notice that any such meeting was to be holden—that he was never present at any meeting of the directors when Palmer was authorized to hire money of the Savings bank, for the company, or to mortgage, or in any way pledge, any of the real or personal estate of the company to the bank; and that he had no knowledge that any such authority was given to him, and never at any time assented, in any manner, to any such transaction. James Haselton, the president of the company, had always acted as a director, and was so regarded. He had no notice of any meeting of the directors on the 13th of January, and no knowledge that any mortgage was to be executed. Ira Haselton testified that the company had a standing contract with Messrs. Whitwell, Bond & Co., of Boston, in relation to their furnishing the company brown goods, for printing, and advancing money, and accepting the drafts of the company on them, which enabled the company to conduct and carry on their business without hiring money—that Palmer, when the business required it, was authorized to get their drafts and acceptances discounted, and thus raise money, when needed, before they became due and payable; but that he was never authorized to hire money, or sign notes, in the name, or on behalf, of the company.

It appeared, further, that on the 19th of March, 1837, Andrew W. Bell commenced an action against the company, and on the same day attached the iron steam boiler which was not set, and the ten calico printing shells; and at August term, 1837, he recovered judgment against the company, and caused the property to be sold on his execution. The Savings bank soon after commenced an action against the sheriff, for the property thus taken, which is still pending.

It was agreed that the court should order judgment to be entered, according to their opinion upon the foregoing case.

*Christie*, for the plaintiffs. The case finds that the trus-

tees have in their possession property, besides land and buildings, to the amount of about $4·000, that was once the property of the company, and continued in their use and possession for some six months after the commencement of this action, when the trustees took possession thereof, under an alleged mortgage from the company.

For this property the trustees must be charged, unless it be such as cannot be holden by the process of foreign attachment, or unless the mortgage under which they profess to have taken possession thereof, and to claim the same, be a good and valid conveyance. Each of these grounds of defence the trustees attempt to sustain.

I. The property, except perhaps the three steam boilers that are set, is not fixtures, but personal chattels, and subject to attachment, as such, by actual seizure, or by this process. These articles were never attached or annexed to the freehold, but simply rested upon it. This property consists of machines, engines, and instruments, perfect and entire in themselves, that are of intrinsic value, and worth as much in any other factory, as where they are ; and that can be removed without losing their essential character, or value, as personal chattels. The question, in this view, is not, what would pass by a conveyance of the factory, or real estate, in general terms; but what might have been attached and sold as personal property, in a suit against said company, while they owned, and were in possession of the whole premises ; for whatever might have been thus attached, may be holden under this process, in the hands of the trustees, they having no legal claim or lien thereon. As to the doctrine of fixtures, *see Lawton* vs. *Lawton,* 3 *Atk.* 13 ; *Bull. N. P.* 34 ; 1 *Atk.* 477 ; *Poole's Case,* 1 *Salk.* 368 ; *Elwes* vs. *Maw,* 3 *East* 38 ; *Toller's Ex'rs* 198 ; 1 *H. Black.* 259, *and note ;* 3 *Esp.* 11 ; *Horn* vs. *Baker,* 9 *East* 222 ; 4 *Co.* 62 ; *Amos & Ferard* 5, 274, *et seq. ;* 1 *Hill's Abr.* 11–16 ; 3 *Tyrwhitt's R.* 603 ; *Holmes* vs. *Tremper,* 20 *Johns.* 29 ; *Heermance* vs. *Vernoy,* 6 *Johns.* 5 ; 3 *Pow. on Mortgage,*

*Rand's Ed.*, 1040, *note.* That this was personal property, and might be attached as such, *vide* 14 *Mass.* 352, *Gale* vs. *Ward ;* 17 *Johns.* 116, *Cresson* vs. *Stout ;* 3 *Vermont R.* 425, *Tobias* vs. *Francis ;* 5 *Cowen* 323, *Reynolds* vs. *Shuler ;* 7 *Cowen* 319, *Raymond* vs. *White ;* 5 *Vermont R.* 136, *Wetherbee* vs. *Foster ;* 9 *Connecticut R.* 63, *Swift* vs. *Thompson ;* 2 *Kent's Com.*, 3d *Ed.*, 243. Certainly the large boiler that lay in the yard, and had never been set nor used, and many other of the articles are, beyond all doubt, personal and attachable property.

II. The mortgage is of no validity, for the reasons following, viz.: 1. The directors of a manufacturing company cannot sell and convey all the real and personal estate thereof, and thus determine and close the business of the company, unless expressly empowered so to do by the charter, by-laws, or a vote of the corporation. 8 *N. H. Rep.* 34, *Parsons* vs. *McKnight.* Nor, indeed, can they convey any of the real estate, without being thus empowered.

2. If any such power is given, it must be by the clause in the by-laws, by which the directors shall jointly manage all the affairs of the corporation. If the power be claimed under this clause, it must be executed as delegated and claimed, that is, jointly by all the directors, and could not be delegated to, or executed by, any one or more of them, short of the whole. A joint authority, for a private purpose, must be executed by all to whom it is committed, to bind the principal. *Andover* vs. *Grafton,* 7 *N. H. Rep.* 304, *and auth. cited ; Story on Agency,* ch. 4, § 42, *and note ;* 2 *Kent,* 3d *Ed.*, 633 ; 6 *Johns.* 38 ; 1 *B. & P.* 236 ; 1 *Johns.* 500 ; 9 *East* 26 ; 3 *Merivale's R.* 237, *Blore* vs. *Sutton ;* 12 *Mass.* 237, *Emerson* vs. *P. H. Man. Co. ;* 4 *Mass.* 522, *Stoughton* vs. *Baker ; Paley on Agency* 148 ; *Bac. Abr., Authority D. ; Story on Agency,* ch. 2, § 13, 14, *and auth. cited ; Angell & Ames on Cor.* 149.

3. A majority of a board of directors is always necessary to constitute a quorum for the transaction of business, unless

otherwise expressly provided by the charter or by-laws. *Rex* vs. *Varlo, Cowp.* 248; *King* vs. *Bellringer*, 4 *T. R.* 810 ; *same* vs. *Miller*, 6 *T. R.* 268; *same* vs. *Bower*, 1 *B. & C.* 492 ; *Ex parte Wilcocks*, 7 *Cowen* 402, *and note ; Field* vs. *Field*, 9 *Wend.* 394–403 ; 2 *Kent's Com.* 293 ; 5 *Dane's Abr.* 150 ; 9 *B. & C.* 648, *Rex* vs. *Whitaker ; 1b.* 851, *Blacket* vs. *Blizard ; Angell & Ames on Cor.* 281.

If Emery be considered a director, there were four directors of the company. Emery and Palmer were not a majority of the directors, and could not alone make, nor authorize Palmer to make, this mortgage or note.

4. Emery was not a director, nor even ever a member of the corporation, and never acted as such on any other occasion. The meeting of Palmer and Emery, on the 13th of January, 1837, was casual, and on other business. There was no meeting of the directors at that time and place, nor any notice for, or of, any such meeting, given to any one.

5. The vote relied on, as authorizing Palmer to make this note and mortgage, authorizes him to make them to " The Dover Savings Bank," whereas this deed and note are made to " the Savings Bank for the county of Strafford," an entirely different name and corporation from that mentioned in the vote. Palmer has not followed the authority given by the vote, and the deed and note are therefore void. *Burnham* vs. *Savings Bank*, 5 *N. H. Rep.* 446, *and auth. cited.*

III. Neither the mortgage nor note can be sustained on the ground that Palmer, as agent, had authority to make them. 1. Because he did not profess to have, nor, in this business, to act upon, any such authority, or power ; and the bank did not negotiate with him upon any such ground, but upon the ground of special authority given him by the vote, a copy of which he furnished to them as the basis and evidence of his authority, thus showing that neither he, nor they, understood that Palmer, as agent, had authority to do this business.

2. Because Palmer in fact had no such authority. It does

not appear that any such authority was ever given him. He had never exercised any such authority. It does not appear that he had ever borrowed money, or given a note for, or in the name of, the company.

' IV. This conveyance, as to the chattels, cannot avail or be held good, as a pledge, even if Palmer had authority to pledge them, (which was not the fact,) because there was no delivery. *Story on Agency* 201, § 297, *and auth. cited.*

V. The note is Palmer's note, and not the company's. It does not purport to bind the company, even if he had authority to bind them by note. Especially, as it does not appear that this money came to their use, this note should not be held to bind the company. *Underhill* vs. *Gibson*, 2 *N. H. Rep.* 352 ; *Stackpole* vs. *Arnold*, 11 *Mass.* 29 ; *Bayley on Bills, last Ed.*, 68, *and notes ; Mayhew* vs. *Prince,* 11 *Mass.* 54 ; *Eaton* vs. *Bell*, 5 *Barn. & Ald.* 34 ; *Thomas* vs. *Bishop, Stra.* 955 ; *Atwood* vs. *Munnings*, 7 *B. & C.* 278 ; *Pentz* vs. *Stanton*, 10 *Wend.* 271 ; *Thacher* vs. *Dinsmore,* 5 *Mass.* 299 ; *Foster* vs. *Tuttle,* 6 *Mass.* 58 ; *Hills* vs. *Bannister,* 8 *Cowen* 31 ; *Barker* vs. *Ins. Company,* 3 *Wend.* 94 ; *Binney* vs. *Plumley,* 5 *Vermont R.* 500 ; *Childs* vs. *Monins,* 2 *Brod. & Bing.* 460 ; *Hopkins* vs. *McTaffey,* 11 *Serg. & R.* 129.

VI. There is no evidence nor circumstance in the case, showing a ratification or adoption of this transaction of Palmer with the bank, by said company, or their directors. And, indeed, nothing short of a formal vote of the company, or directors, could give validity to the deed, and perhaps even this would not.

VII. The company do not owe the bank on account of the $3000 received by Palmer of them, unless he had power to bind them by note therefor, even though no part of it went to their use, but was by him applied wholly to his own use, as is believed to have been the fact. At least, it does not appear that any part of it ever came to the use of said company, and they are not to be charged for it, on this ground,

till the fact is made to appear. But even if the company do owe the bank this $3000, the trustees are not, on that ground or account, entitled to retain these chattels. A mere creditor, happening to have, or get into his hands specific articles belonging to his debtor, has no lien upon them, and cannot retain them for his debt. 15 *Mass.* 415, *Jarvis* vs. *Rogers;* 15 *Mass.* 490, *Allen* vs. *Megguire; 5 Pick.* 178, *Jewett* vs. *Brown & Tr.; Cush. on Trustee Process* 16, 20; 4 *N. H. Rep.* 469, *Hutchins* vs. *Sprague, and auth. cited.*

VIII. The goods having been attached and taken, by an officer, out of the hands of the trustees, at the suit of A. W. Bell against said company, is no reason why it should not be found and held, that the trustees had goods and chattels of said company in their possession; nor is it any reason why execution should not issue against them for said goods thus attached and taken from them.

IX. If the mortgage and note are both holden good, still the trustees are chargeable, or are not to be discharged; for they have chosen to foreclose, and have actually foreclosed the mortgage as to the real estate; and have thus perfected their title thereto, made it an actual purchase, and taken it towards their debt or claim, and must thus account for it at its value, at least to the extent of their debt. This they have done without first appropriating the personal property to the payment, or part payment, of their debt, by giving notice, and then selling. Now if the real estate was at the time of the foreclosure of sufficient value to pay their claim, then it is paid, and the personal property is no longer holden by the mortgage, but is absolutely released and discharged therefrom. If the real estate has paid part only of the trustees' claim, and the personal is more than sufficient to pay the balance, the plaintiffs are entitled to that balance. *Amory* vs. *Fairbanks*, 3 *Mass.* 562; *Newell* vs. *Wright*, 3 *Mass.* 154; *West* vs. *Chamberlain*, 8 *Pick.* 336; *Hedge* vs. *Holmes*, 10 *Pick.* 381; *Hatch* vs. *White*, 2 *Gallison* 152; *Ormsby* vs. *Swain*, 3 *Mason* 474; 1 *Hilliard's Abr.* 334, § 8; *Ib.*

341, § 31; *Webb* vs. *Peele*, 7 *Pick.* 247. That the right to redeem the personal property still exists, or has not been foreclosed, *see Leighton* vs. *Shapleigh*, 8 *N. H. Rep.* 361, *and auth. cited;* 2 *Story's Eq.* 297.

*James Bell*, for the trustees. The Savings Bank contend,

I. That they cannot be charged as trustees for the fixtures, which constitute the greater part of the property shown to be in their possession. They are in possession of these fixtures either as purchasers and owners of the real estate, as a pledge, or without any right.

They are not in possession of the real estate as tenants, in which case their creditors would have the same right to levy upon fixtures belonging to them, as the tenants would have to sever and remove them.

If in possession as purchasers, they are entitled to all fixtures which an heir could claim as against an executor, which include not only things actually annexed to the freehold, but things personal in their nature, but fitted and prepared to be used with real estate, and essential to its beneficial enjoyment. 1 *Hil. Law of Real Property* 16; 15 *Mass.* 159, *Union Bank* vs. *Emerson;* 1 *Brod. & Bing.* 510, *Stewart* vs. *Lombe;* 4 *Paige's R.* 77, *Le Roy* vs. *Platt;* 6 *Greenl. R.* 154, *Farrar* vs. *Stackpole;* 6 *Cowen* 665.

If the bank, or the principal debtors, are the owners of the real estate, and fixtures, the latter cannot be levied upon as personal property. 5 *B. & A.* 625, *Winn* vs. *Ingilby,* and of course the bank cannot be holden upon the trustee process.

And the manufacturing company in their capacity of mortgagers could not remove these fixtures, and their creditors can have no greater right in this respect than themselves. 5 *N. H. Rep.* 54, *Pettingill* vs. *Evans;* 1 *Brod. & Bing.* 506, *Stewart* vs. *Lombe.* It is settled, also, that fixtures are not chattels, (like emblements, &c.,) but parts of the freehold, and therefore are not within the words of the statute providing the remedy against trustees of debtors. *Hil. Law of*

*Real Property* 11, 12; *Amos & Ferard on Fixtures* 9, 10; 7 *Taunt. R.* 190, *Lee* vs. *Risdon.*

II. But the supposed trustees have a valid conveyance, by mortgage, of the property in question. If it exceeds in value the debt which it was made to secure, the plaintiffs may have an order of court for the delivery of the property, upon their paying the trustees' debt. *See Stat. Dec.* 12, 1832, 2 *Laws* 83. Such is the remedy of the plaintiffs, as to any personal property which the bank may have in their hands.

Palmer and Emery authorized the execution of the mortgage, to secure the loan made by the trustees, and they constituted a majority of the directors of the manufacturing company. Palmer was an original member of the corporation, was duly chosen a director, and acted as a director and as agent. Emery was admitted an associate in the corporation, with those to whom the charter was granted.

The power of corporations to elect or admit members by vote is unquestionable. 2 *Kent's Com.* 293; *Angell & Ames on Corp.* 63. Emery might legally be chosen a director, without having been a member of the corporation; or the act of electing him a director would make him a member. *Angell & A. on Corp.* 75, *citing Currie's Admrs.* vs. *Mut. Ass. Co.,* 4 *Hening & Munf.* 315. It was enough that he was in by color of office, as to strangers to the corporation. 9 *Johns. R.* 147, *People* vs. *Runkell;* 2 *Kent's Com.* 295. To the objection that Emery was not an owner of any stock in the corporation, the last suggestion is a sufficient answer.

The directors had power to execute a mortgage of the property of the corporation. 12 *Wheat.* 113, *Bank U. S.* vs. *Dandridge;* 1 *Caine's R.* 381, *Turnpike Corp.* vs. *Jenkins;* 5 *Wend.* 590, *Jackson* vs. *Bunn.* In directing the mortgage to be executed, Palmer and Emery acted as directors; and as they constituted a majority, it is altogether immaterial whether the other director was notified, attended, or acted. 3 *Fairf. R.* 359, *Cram* vs. *Bangor House Proprietary.*

III. It is enough that the directors, Palmer and Emery,

acted under color of office. 2 *Kent's Com.* 295. Even if they were ineligible to the office, or have not given the required bonds, &c., their acts will bind the company. *Angell & A. on Corp.* 137, 158, 160, *and cases there cited.* And it is enough if they are officers *de facto. Id. ; Vernon Society* vs. *Hill,* 6 *Cowen's R.* 23 ; *Baird* vs. *Bank of Washington,* 11 *Serg. & R.* 411 ; *King* vs. *Corp. of Bedford Level,* 6 *East's R.* 369 ; *Tucker* vs. *Aiken,* 7 *N. H. Rep.* 113 ; 12 *Wheat.* 64. Palmer's authority, as general agent of the corporation, appears from his having acted, and having been known to all who had dealings with the corporation, as such. The appointment of the agents and officers of corporations may be implied, and inferred, from the recognition of their acts by the corporation. *Story on Agency* 53, 54, 103, *and cases there referred to.* Such an authority may be as well presumed in relation to the agents of corporations as of individuals, and there is no difference in principle between the two cases. 12 *Wheat.* 64. Persons acting in such situations are presumed to be rightfully acting. 2 *Kent's Com.* 290. And this is, as in the case of natural persons, sufficient evidence of their agency. And as no deed or writing was necessary, in making the appointment, none need be shown. *Angell & A. on Corp.* 132, 155–7 ; *Perkins* vs. *Ins. Co.,* 4 *Cowen* 645.

The general rule of law as to agencies is, that one who is held out to the public at large, or to those dealing with him, as competent to act as agent, will bind the principal by his act ; and if his apparent authority be that of a general agent, he will bind his principal, though he act beyond the actual delegation of power. *Story on Agency* 76, 82, 85, 116, 123 ; 13 *Wend.* 518, *Jeffrey* vs. *Bigelow.*

IV. Palmer, as agent of the manufacturing company, had, independently of any vote, power to borrow money, and to pledge machinery to secure the loan. These acts are within the scope of the powers of manufacturing agents. 7 *Conn. R.* 219, *Stow* vs. *Wise ;* 21 *Pick.* 270, *Hayward* vs. *Trus-*

*tees of Pilgrim Society* ; 6 *Paige* 54, *Lovett* vs. *Steam Saw Mill Co.* ; 8 *Wheat.* 360, *Fleckner* vs. *U. S. Bank.* The extent of the powers of such an agent is to be inferred from those usually given to one holding his situation. 15 *Johns. R.* 44, *Munn* vs. *Commission Co.* ; *Story on Agency* 84, *note*, 94, 86.

In the analogous case of factors, their power to pledge the goods intrusted to them, for debts of their principal, is clearly laid down by Story, after an extensive examination of authorities. *Story on Agency* 100. Any body corporate may as well make contracts of bailments of any kind, as natural persons, if done in the course of business permitted by their charters. *Ang. & A. on Corp.* 132. And the assent of the directors, or of the corporation, to the acts of the agent, if necessary, may be presumed. 12 *Serg. & Rawle* 256, *Bridgway* vs. *Bank of Bucks Co.* ; 7 *Greenl.* 118, *Abbott* vs. *Hermon.*

But it has been objected that this conveyance, being intended to take effect as a mortgage made in pursuance of a vote of the directors, cannot operate as a pledge by authority of the agent alone. But the rule of law is, that conveyances of any kind, if they cannot operate in the manner intended by the parties, shall take effect in any other manner which shall carry into effect the general object of the parties. In such cases deeds of bargain and sale, lease and release, may operate as covenants to stand seized to uses, &c. 2 *Hil. Law of Real Prop.* 336–8 ; 5 *East* 240, *King* vs. *Inhab. of Chipping Norton* ; 5 *B. & P.* 246, *Wood* vs. *Tate.*

Instruments executed by the agents of corporations, with their own seals, which cannot operate as specialties, will have the force of parol contracts. 3 *Fairf.* 354, *Cram* vs. *Bangor House Proprietary.*

The exercise of this power, by this corporation, was necessary for the purposes of its existence, and its legality is to be presumed. 2 *Cowen R.* 664, *Firemen Ins. Co.* vs. *Sturges* ; 1 *Cowen* 513, *Mott* vs. *Hicks.*

The note to the Savings bank is properly executed to bind the manufacturing company.    *Ang. & A. on Corp.* 167, 170 ; 1 *Pick.* 372, *Society* vs. *Church in Dedham ;* 9 *Mass.* 335, *Mann* vs. *Chandler ;* 5 *Wheat.* 326, *Mechanics Bank* vs. *Bank of Columbia.*    These authorities make it clear that this note is to be deemed that of the company, and not that of Palmer.

V.    There is evidence of a subsequent ratification, by the manufacturing company, of the acts of Palmer, which if necessary should be submitted to a jury.    This would, in the case of a corporation, as of an individual, be equivalent to a previous authority.    *Ang. & A. on Corp.* 174, *and cases cited.*

The money borrowed of the Savings bank went to the use of the manufacturing company.    *See Clement* vs. *Jones,* 12 *Mass.* 60.    Their officers delivered possession of the property conveyed, and never rescinded nor denied the mortgage, or pledge.    *Ang. & A. on Corp.* 121, 129 ; 7 *Cranch* 306, *Bank of Columbia* vs. *Patterson ;* 1 *Sim. & Stuart* 520, *Marshall* vs. *Corp. of Queensborough ;* 5 *B. & P.* 247, *Wood* vs. *Tate ;* 1 *Pick.* 372, *Charitable Society* vs. *Ep. Church ;* 17 *Mass.* 29, *Salem Bank* vs. *Gloucester Bank ;* 19 *Johns.* 60, *Randall* vs. *Van Vechten.*

VI.    The supposed trustees are not chargeable, as such, for the property found in their possession, because the principal debtor is indebted to them in a larger amount than the value of the property.    *See opinions of Justices Jackson and Putnam, in Jarvis* vs. *Rogers,* 15 *Mass.* 389.    In cases of fraudulent assignments of goods, the assignee is not liable as trustee, if he, after the assignment, pay their full value.    4 *N. H. Rep.* 469, *Hutchins* vs. *Sprague & Carleton Tr. ;* 5 *Pick.* 32, *Andrews* vs. *Ludlow ;* 16 *Mass.* 476, *Hathaway* vs. *Russell.*

VII.    The Savings bank cannot be charged with the value of the property attached, in the action brought against the manufacturing company, by A. W. Bell.    It was taken from the possession of the bank by legal process, and it is contin-

gent and uncertain whether they will ever recover damages against the sheriff. 17 *Pick.* 289, *Rockwood* vs. *Varnum;* 16 *Mass.* 318, *Burlingame* vs. *Bell.* It would be highly unreasonable, in any case, to throw upon the trustee, (who usually in this class of cases stands in the situation of a mere stake-holder,) the burthen and risk of settling the conflicting rights of attaching and trusteeing creditors.

Parker, C. J. The first question we have considered, is, whether Emery was a director, so that his act, as such, could have any validity. He appears to have been elected an associate of the company, and at the same meeting when the by-laws were adopted, to have been chosen a director. It was suggested that his election was under the first article of the by-laws, which made a temporary provision until the annual meeting in 1837, and that this article did not require that the person elected should be a proprietor; but this position is questionable, and the consideration of it may be waived. The second article of the by-laws, that any person chosen a director should cease to be one when he ceased to be a proprietor, if construed according to its precise language would not prohibit the election of a person who was not a proprietor; and it might possibly have been intended not to debar the corporation from electing one who owned no stock, but only to terminate the official character of any one, who, having been elected and trusted because he was a proprietor, no longer had the interest in the success of the company which formed the inducement to elect him. But this was not probably the construction intended. There is nothing in the proceedings of the company, to show that we ought to give this clause such a strict interpretation, and it may well be construed to render any one who was not a proprietor ineligible. Such seems to be the fair implication. The fact that Mr. Emery was elected to the office does not militate against this construction; for although he was never an owner, his election was very probably made under an antici-

pation that he would qualify himself for the office by a purchase of stock.

But this construction of the by-law does not alter the case. He was elected a director, and his election made matter of record; and he acted as such when the vote, out of which the mortgage to the trustees arose, was entered in the book provided for that purpose. If this election had been by a municipal corporation, coming into office under color of an election he would have been an officer *de facto*, and his acts valid so far as third persons had an interest in them. And the regularity of the election could not in such case be enquired into, except in some proceeding to which he was a party. *7 N. H. Rep.* 131, 135, *Tucker* vs. *Aiken, and cases cited.* As a director of a private corporation, although called, in common parlance, an officer of the corporation, he is, perhaps, not technically to be considered an officer *de facto.* He is one of the agents elected by a vote of the corporation, for the management of its affairs, or some of them. But a similar rule must prevail in relation to the effect of his acts, so far as the corporation have held him out as an agent, and third persons have confided in his acts, done within the scope of the authority he appeared to possess. By electing him a director, and permitting him to act as such, the corporation held him out to the world as a director—as one of their agents, having all the powers of an agent of that description, and to be trusted as such. And it was only necessary, under such circumstances, for those who dealt with the corporation through him, to enquire what powers directors had, and what acts the corporation had authorized them to do. They were not required to investigate the qualifications which the corporation had prescribed to itself, as the condition upon which any one should be elected, or permitted to act. The corporation, when Emery was elected, had the means of knowledge whether he was qualified according to their by-laws. On the conjecture that he was expected to take stock, and that the election was made in anticipation of that, he might

have been required forthwith to become a stockholder, before his acceptance, or the corporation might have proceeded to another election. Instead of this, they left his election as a director upon the record, as if he was duly eligible, and thus held him out, and permitted him to hold himself out, as a director ; and he so acted. It is a settled rule, that a person is bound by the acts of another, whom he has held out to the world as his agent for that purpose. *Davis* vs. *Lane*, (10 *N. H. Rep.* 156 ;) *Beard* vs. *Kirk*, (11 *N. H. Rep.* 397.)

Here, however, another question arises. Ira Haselton was a director, duly elected. Without considering whether the president was *ex officio* a director, as well as presiding officer of the board—and without enquiring into the particular effect of the provision in the second article of the by-laws, that the directors should *jointly* manage the affairs of the corporation—it is sufficient to say that there were three directors, and only two of them were present, and authorized this mortgage to the trustees.

The vote, authorizing the mortgage, purports to have been passed at a meeting of the directors ; and it might, nothing appearing to the contrary, well be presumed that it was passed by all, or had the concurrence of the requisite number to render it valid. And it might not be sufficient to rebut this presumption, to show that the assent of the several directors was procured without any meeting, or consultation, each giving his assent at a different time and place ; although this is not perfectly clear. There are safeguards in consultation, and considerations of policy, as well as of construction, which, in the absence of special authority authorizing a different course, furnish an argument in favor of the position, that an authority to two or more officers or agents of a corporation, in their discretion, to do certain acts, is not well executed by the assent of all, if given separately to the acts. On the other hand, if all concur in assenting to or directing the act, it may be said, with much force, that all

Despatch Line of Packets *v.* Bellamy Man. Co.

is done which the constituent required, where there is no express restriction rendering the presence of the whole number, together, necessary, in order to the validity of any act done. But it is not important to discuss this farther, at this time. However this may be, all presumption that the vote authorizing this mortgage had the concurrence of all the directors, is expressly negatived by the evidence in the case; from which it appears that Ira Haselton never joined in it, or in any way assented to it, and that he was not even consulted on the subject before the mortgage was made. Taking the most favorable view of the matter, the vote was the act of two, out of three directors, without any consultation with the third, or any concurrence on his part; and is this sufficient to bind the corporation, and render the mortgage valid?

It has been held that where the directors of a corporation have power to bind it by their contracts, that power may be exercised by a majority. 3 *Fairf.* 354, *Cram* vs. *The Bangor House Proprietary.* And this is cited as an authority in point, in this case. But it by no means settles the question now presented. It did not appear in that case, that all the directors were not present; or if they were not, that they had not been notified, and had an opportunity to be present; which, appearing here, constitutes a marked difference between the two cases.

Where is the authority to be found, in this case, for two of the directors to do this act, without the knowledge of the other? The sixth article of the by-laws provides, that " the directors shall have power" (after other matters specified,) " to exercise the general superintendence and control over the affairs of the company, and to appoint an agent or agents, and such other officers for carrying on the business of the company," &c., " as they may determine." The second article gave them, jointly, similar powers. This is a very general authority, sufficient to authorize them to borrow money and execute a mortgage. But this power is given to the

directors—not, in terms even, to a majority of them. There was here no vote of the corporation giving them any special power to execute the mortgage, or to authorize it to be done. The mode in which the directors might act depends, therefore, upon the principles applicable to by-laws which confer powers upon the directors generally. The general principle in relation to agencies is, that where an authority is given to two or more persons to do a private act, the act is valid, to bind the principal, only when all of them concur in doing it. *Story on Agency* 44 ; 7 *N. H. Rep.* 304, *Andover* vs. *Grafton, and auth. cited.*

Where the authority is to do an act of a public nature, if all meet for the purpose of executing it, a majority may decide. 1 *B. & P.* 229, *Grindley* vs. *Baker ; Co. Litt.* 181, *b. ;* 5 *Binn.* 481, *Case of the Baltimore Turnpike ;* 9 *B. & Cres.* 648, *The King* vs. *Whitaker.*

The duties of officers, so called, of corporations, where those duties are prescribed by the corporation itself, are in the nature of an agency ; but such officers or agents, appointed not to do single acts, but for regular terms, and having by the by-laws a general or very extensive authority in the management of the concerns of the corporation, it is believed have not in practice been supposed to come within either of the above rules. And it might not only be inconsistent with the general usage upon the subject, but operate to impose unnecessary restrictions upon such bodies, to apply a rule requiring in all cases the assent, or even the presence, of all the directors, or agents of any other class, deriving from the by-laws regular powers.

Had the authority of the directors, to manage and exercise a general superintendence and control over the affairs of the company, been conferred by the charter itself, it would have been in the nature of an original corporate power in a definite number, and a majority of the whole number being duly assembled, at a regular meeting, might act by the major vote of those present. 6 *D. & E.* 278, *The King* vs. *Miller ;*

4 *D. & E.* 823, *The King* vs. *Bellringer; Cowp.* 250, *Rex* vs. *Varlo;* 1 *B. & P.* 236; 7 *Cowen* 409, *and note,* 410, *Ex parte Willcocks.* Does it make any difference, in this respect, that the power is found in the by-laws, instead of being conferred directly by the charter? The principle has been applied in other cases than those of public corporations. 9 *Barn. & Cres.* 851, *Blackett* vs. *Blizard.*

The directors of corporations generally, whose usages have been such as to deserve notice, (although no evidence of usage is found in this case,) are supposed to have had stated or notified meetings, at which a majority undertook to transact the business confided to the board ; and to hold that the act of the majority in such cases was invalid, might shake titles, or cause other inconveniences to a serious extent.

And we are of opinion, that where the by-laws of a private corporation confer upon the directors power to act in behalf of the corporation, without special limitation as to the manner, a majority may act, within the scope of the authority given to the board, and bind the corporation, either where there is a consultation of all together, and a concurrence of a majority ; or where there is a regular meeting, at which all might be present, and a majority actually meet, and act by a major vote. 8 *Conn. R.* 191, *Savings Bank* vs. *Davis.* And when the act purports to be the act of the board, it may be presumed that it was the act of a majority, until the contrary is shown.

We are not aware of any well settled principle, or usage, which will carry us farther than this. The cases which hold that a majority of a definite body being assembled, a major part of those assembled may act, presuppose a regular meeting, or one on notice.

We consider the decision in Maine in concurrence with these principles, as far as it extends on the facts in that case.

But this presumption just adverted to, may be rebutted, and is so in this case. Here was no assent of all the directors at any meeting, or even obtained separately, if that might

be held sufficient. Nor were there a meeting and consultation of the whole board, and the vote of a majority, authorizing the act to be done. Nor was there a meeting regularly notified, or held at some regular period, at which, all not appearing, a majority assembled, and acted by a major vote. There is nothing to show that Ira Haselton had any opportunity to act; and the attempt, therefore, to show a preëxisting authority to give this mortgage, by means of the vote of the directors, must fail, if the corporation were contesting the matter on the evidence before us.

In this view, it is not necessary to consider another question which has suggested itself, and that is, whether the directors, in case all had assembled, could have conferred authority upon one of their body, or any other person, as agent, to make the mortgage; or whether it must, in order to its validity through the acts of the directors, as such, have been executed by at least a majority of the board of directors. The general principle is, that one who has a bare power to do an act, must execute it himself, and cannot delegate his authority to another—that the authority is exclusively personal, unless from the express language used, or from the fair presumptions growing out of the particular transaction, or of the usage of trade, a broader power was intended to be conferred on the agent. *Story on Agency* 14, 16; 7 *N. H. Rep.* 304. If this had been material, it might have deserved consideration whether the power given to the directors, to appoint agents for carrying on the business of the company, were not sufficient of itself to authorize the delegation in this case, or whether that were to be confined to the ordinary business of the corporation. 8 *Conn. R.* 201, 207; 12 *Mass. R.* 522.

The evidence failing to establish the validity of the mortgage to the trustees, through the vote of the directors appended to it, other questions present themselves on the case before us.

It has been contended that Palmer, as general agent of the

company, had power to borrow money, and to pledge the machinery, to secure the loan, without vote. This was not a pledge. No possession appears to have been given, or intended to have been given, at the time. But if it had been, there is nothing in the by-laws, or in the nature of the agency, nor any thing in the authorities cited, which can sustain the right to pledge the machinery, even if that of borrowing money may be inferred. *Stow* vs. *Wyse,* 7 *Conn. R.* 219, contains a strong implication to the contrary. The by-laws provide that the directors may appoint an agent, or agents, for carrying on the business of the company. But it is not carrying on the business of the company to pledge or mortgage the machinery used by the company, and thereby suspend its operations, or place them at the will and pleasure of a mortgagee. *Ang. & Ames on Corp.* 172, *and cases cited;* 7 *Wend.* 33, *Life & Fire Ins. Co.* vs. *The Mechanics Fire Ins. Co.* Circumstances might be such, possibly, as to show an authority to pledge the manufactured goods, which he was authorized to dispose of, but that is not this case.

The note to the Savings bank is carelessly drawn; but there is sufficient on its face to show that it was intended to be the note of the Bellamy manufacturing company, and it might well subsist as such, if Palmer had authority to execute it. *See* 2 *Stark. Ev.* 477, *n.* 1; 2 *East* 142, *Wilks* vs. *Back;* 7 *N. H. Rep.* 484, *Montgomery* vs. *Dorion;* 10 *Wend.* 271, *Pentz* vs. *Stanton; Savage* vs. *Rix,* (9 *N. H. Rep.* 263;) 2 *Wend.* 325, *Evans* vs. *Wells.* There is no form prescribed, in which such an instrument shall be made; and it is immaterial whether the name of the principal or agent be placed first, if the authority exist, and the intention be apparent. There can be no good reason why Palmer should have added, " Agt. Bellamy Man. Co." to the signature, if he intended to make a personal contract. It may be held to be the note of Palmer, if there were no authority, and no ratification of the act. But a ratification will exonerate him from liability. *Story on Agency* 246.

The mortgage which he executed at the same time, and which was part of the same transaction, and describes the note as the note of the company, is formal to convey as well real as personal estate. It purports to contain a conveyance, and covenants of the company, and to be executed by the company, and that the corporate seal is affixed. The signature and acknowledgment are that of the company, made by Palmer as agent. Being, in form, the deed of the company, executed by one who assumed to act as their agent, it is susceptible of ratification ; and the next question is, whether it has ever been ratified, and if so, to what extent. This includes the consideration of what is necessary to a ratification.

There has been some diversity of opinion upon the subject whether a corporation, or the directors of a corporation, can constitute an agent for the conveyance of real estate, except by a power under the corporate seal. 8 *Conn. R.* 192.

In the case of an individual, whenever any act of agency is required to be done, in the name of the principal, under seal, the authority to do the act must be conferred by an instrument under seal. 6 *N. H. Rep.* 250, *Montgomery* vs. *Dorion; Story on Agency* 50.

There seems to be no doubt that, according to the rule of law as held in England, a corporation cannot convey, nor mortgage, but under the corporate seal. 4 *Kent's Com.* 443, *and auth. cited ;* 8 *Conn. R.* 191.

But a different rule has prevailed to some extent in this state, so far at least as regards conveyances by towns, and the proprietors of common and undivided lands. 5 *N. H. Rep.* 458, *Cofran* vs. *Cochran ;* 7 *N. H. Rep.* 275, *Copp* vs. *Neal ; Atkinson* vs. *Bemis,* (11 *N. H. Rep.* 44 ;) 4 *N. H. Rep.* 102, *Coburn* vs. *Ellenwood.* In this latter case, Chief Justice Richardson said, " It is not now to be doubted that the proprietors of common and undivided lands are corporations, or that they can by vote authorize agents to make conveyances in their name, or that deeds properly executed by such agents may be valid to pass the estate."

Despatch Line of Packets *v.* Bellamy Man. Co.

And the weight of authority in this country seems to be in favor of the position, that private corporations, or boards of directors through which their business is transacted, may appoint an agent for the conveyance of real estate, by vote, without a power or instrument under the corporate seal. *Angell & Ames on Corp.* 114, 154; 8 *Conn. R.* 192, 202, *and auth. cited.* If the formality of an instrument under seal, conferring the power upon the agent who is to make the conveyance, should be required, it would add nothing to the authenticity of the conveyance, if the individual who affixes the seal to the power derive his authority from a mere vote of the corporation.

But there is here no vote of ratification, either by the corporation or by the directors; and we are not aware of any authority which will justify us in going farther, and holding that a deed of real estate may be ratified by a corporation, without vote or writing. The general principle is, that if the act of the agent purport to be under seal, and in the name of the principal, so as to be his deed, the ratification must be under seal. *Story's Agency* 246. A *parol acknowledgment* by a *principal*, that an agent had authority *under seal* to enter into a *sealed contract* obligatory upon his principal, is competent evidence of such authority; but if, at the time of entering into it, the agent had in fact *no authority under seal*, the subsequent *parol* acknowledgment and ratification will not bind the principal. 12 *Wend.* 525; 9 *Wend.* 68, *Blood* vs. *Goodrich; Holt's N. P. R.* 141, *Steiglitz* vs. *Egginton;* 20 *Wend.* 258, *Wells* vs. *Evans.* And in a case where a sealed instrument was not necessary, but an agent was authorized, by parol, to enter into a contract for the purchase of timber, and he entered into a sealed contract, a counterpart of which in like form was delivered to the principal, and acknowledged by him as the evidence of the contract, and he received the timber and made some payments, it was held that an action of covenant could not be maintained on the contract. 9 *Wend.* 54, *Hanford* vs. *McNair.*

A ratification of an act, done by one assuming to be an agent, relates back, and is equivalent to a prior authority. *Story on Agency* 235, 239. When, therefore, the adoption of any particular form or mode is necessary to confer the authority in the first instance, there can be no valid ratification except in the same manner. If a sealed power were not necessary to this as a conveyance of the real estate, but a written vote would have been sufficient, because a corporation may constitute an attorney by vote for such purpose, then such vote at least must be held necessary to a ratification. We are of opinion, therefore, that this mortgage is inoperative as to the real estate. And this must apply to the fixtures.

The strict rule as to fixtures, that prevails between heir and executor, applies as between vendee and vender. 2 *Kent's Com.* 280; 6 *Cowen* 665, *Miller* vs. *Plumbe;* 20 *Johns.* 30; 1 *Harr. & Johns.* 291.

The same rule applies between mortgagee and mortgager. 15 *Mass.* 159, *Union Bank* vs. *Emerson;* 2 *Adolph. & Ellis* 167, *Longstaff* vs. *Meagoe.*

Machines, and other articles essential to the occupation of a building, or to the business carried on in it, and which are affixed or fastened to the freehold, and used with it, partake of the character of real estate, become part of it, and pass by a conveyance of the land. 3 *N. H. Rep.* 504, *Kittredge* vs. *Woods, and cases cited; Amos & Ferard on Fixtures, chap.* 4, 132, 151; 3 *Mason's R.* 459, 464, *Powell* vs. *The Monson & Brimfield Man. Co.;* 7 *Mass. R.* 432, *Goddard* vs. *Chace;* 17 *Pick. R.* 192, *Gaffield* vs. *Hapgood;* 19 *Pick.* 314, *Noble* vs. *Bosworth;* 1 *Harr. & Johns. R.* 291, *Kirwan* vs. *Latour.*

Such articles pass by the conveyance, although disannexed for a temporary purpose. 11 *Coke* 50, *Richard Liford's case, cites Wistow's case; Shep. Touch.* 90. And some things are held to be constructively annexed. 11 *Coke* 50; *Amos & Ferard on Fixtures* 183; 20 *Wend.* 639. Exceptions have been made, or the property has not been deemed fix-

tures, in the case of a stone for grinding bark, (6 *Johns. R.* 5, *Heermance* vs. *Vernoy*,) machines for spinning and carding, attached by "cleats," &c., (17 *Johns. R.* 116, *Cresson* vs. *Stout ;* 9 *Conn.* 63, *Swift* vs. *Thompson*,) and carding machines, secured by nails or spikes driven into the floor, 14 *Mass. R.* 354, *Gale* vs. *Wood.* The report of this last case, however, is somewhat contradictory upon the point, and the case itself was doubted by Chief Justice Richardson, 3 *N. H. Rep.* 506. *See, also,* 20 *Wend.* 641 ; 3 *Dane's Abr.* 156.

Articles of furniture, it is said, do not come within the rule, although temporarily attached. 20 *Wend.* 645, *cites Gibbon on Fixtures* 20, 21. *And see Amos & Ferard* 151, 154, 183–185.

Some of the excepted cases seem to have made the question depend upon the character of the fastening, whether slight or otherwise. But this is a criterion of a questionable character, not sustained by the weight of the decisions. More depends upon the nature of the article, and of its use as connected with the use of the freehold. Perhaps, however, the case, *Farrar* vs. *Stackpole*, 6 *Greenl.* 154, where a chain used with a saw-mill was held to be a constituent part of the mill, carried the doctrine of annexation to the extreme point ; to say nothing of the mill bars, which it seems were admitted to have passed by the conveyance of the saw-mill.

It is not practicable to lay down a rule in a few words which shall be applicable to all cases. The particular circumstances of each case are entitled to special consideration.

Different rules prevail in the case of landlord and tenant.

Upon the general principles above stated, the kettles set in brick work were fixtures. So of the steam engine. Although not attached to any fastening, it could not be removed without taking down part of the building. It may with propriety be said to be constructively affixed. So as to the hand press let into the floor, and the steam pipe, probably ; although, as to these articles, perhaps farther evidence respecting the mode of annexation, and use, might be desirable. Respect-

ing the cullender there is not sufficient evidence to determine its class.

Loose, movable machinery, not attached nor affixed, even where it is used in prosecuting any business to which the freehold property is adapted, is not to be regarded as part of the real estate, or as an appurtenance to it. 20 *Wendell's R.* 636, 655, *Walker* vs. *Sherman ;* 6 *Cowen's R.* 665 ; 1 *Harr. & Johns.* 291 ; 9 *East* 215, *Horn* vs. *Baker.*

The printing machine, printing shells, and the boiler which lay without the building, and tools, come within this description.

A further question then arises, whether the deed executed by Palmer might avail as a mortgage of the personal estate included in it, and whether there be sufficient evidence of its ratification as such.

As to the personal estate, no instrument under seal was necessary. A bill of sale, or a sale without writing, accompanied by delivery, might have passed the absolute property, if the agent making it had authority. In order to a record of a mortgage of personal property, it must of course be in writing, but the statute has not made a seal essential to the validity of such a mortgage. If, then, this instrument cannot operate to convey the real estate, nor as a sealed instrument conveying the personal, it may not follow that it is not available as an unsealed instrument, if it contain any thing to authenticate which a seal is not necessary.

In *Hanford* vs. *McNair*, before cited, in which it was held that covenant would not lie on the sealed contract to pay for the timber, Mr. Justice Sutherland said, " The subsequent act of the defendant, under this contract, recognizing and carrying it into effect, may be sufficient to make it binding on him as a parol contract, but cannot make it his deed." Upon this, however, he gave no definite opinion. The case of *Banorgee* vs. *Hovey*, 5 *Mass.* 14, to which he referred as in some respects essentially different from that case, is also different from this. There was there perhaps a well founded objection against the declaration. But another question, and the one

principally discussed, was, whether a bond which Smith was not authorized to make for the defendants, but by which he attempted to bind himself, and the defendants, as principals, with him, precluded the plaintiff from recovering for the money lent, in an action of assumpsit.   Without extending this opinion by a discussion of the matters there decided, it is sufficient to say that the decision was based in no small degree upon the ground that the bond was good against Smith, who was one of the principals, and attempted to bind the rest as their agent ; and that it therefore operated as an extinguishment of the simple contract debt, which otherwise might have existed against the principals.   Mr. Justice Sewall dissented.   The case seems to have been very much considered, but the enquiry presents itself notwithstanding, if Smith, as the agent, undertook to bind the other principals, in a manner in which he was not authorized to do, although he had effectually bound himself so that the plaintiff might have pursued his remedy against him upon the bond, on what principle was the plaintiff, by the receipt of such a bond, (by which he supposed Smith had well bound all the defendants,) precluded from resorting to an implied assumpsit, of all the supposed principals, to pay for the money which Smith borrowed in their behalf, and which it is assumed, in part of the case at least, went to their benefit ?   The plaintiff had not accepted, nor intended to accept, such a bond as that in question turned out to be, (that is, the bond of Smith alone,) and in this respect there was a material difference between that case and some of the cases cited in support of the decision. If the bond which the plaintiff received had been what it purported to be, and bound the defendants as well as Smith, then it might well have been held that the acceptance of the higher security had barred the remedy on *indebitatus assumpsit.*

There seems to be no good reason why this instrument, if it may not operate as a conveyance under seal, should not operate as a mere writing without seal, if the evidence be suf-

ficient to establish it as the transfer of the company, provided a seal had not been put to it. If an agent, authorized to make a promissory note, should make one in the proper form, signing the name of his principal, and put a seal to it—although this could not be declared on as the covenant of the principal, why should it not be valid as his note? If it were in such phraseology that the agent himself might be bound as on his personal covenant, at the election of the holder, why should the holder be compelled to resort to and rely upon that covenant, when neither party at the time contemplated the personal liability of the agent? Why should not the creditor be permitted to reject the seal, which the agent was not authorized to put there, and treat it, as it ought to have been, and would then be, a legal parol promise of the principal? Suppose this instrument had contained, in addition to the mortgage, a receipt by Palmer for a sum of money, which he as agent was clearly entitled to receive, would it not be as good evidence to show the payment of the money, as a simple receipt by him without any seal? It does contain an acknowledgment of the receipt of the consideration. Whether that be not so connected with the conveyance, that if it cannot operate as a deed, it cannot properly be evidence, standing alone, to charge them with the receipt of the money, is a question of a character somewhat different, and which need not extend the present opinion.

We see no good reason why, if there be sufficient evidence of ratification, this instrument should not operate as a mortgage of the chattels. As between the parties, no formal appointment is necessary for the execution of an instrument of that character. The agent may be appointed by parol, and his authority shown by evidence of that character. And a mortgage or pledge of the personal property of a corporation, by one undertaking to act as agent, may be shown to be valid, either by evidence of the acts of the corporation, prior to the mortgage, from which an authority to make it may be inferred, or by subsequent acts showing a ratification. 4 *Shepley* 439, *Warren* vs. *Ocean Ins. Co.* ; 21 *Wend.* 296, *Troy*

*Turnpike* vs. *McChesney;* 2 *Conn.* 252, *Bulkley* vs. *The Derby Fishing Co.;* 1 *Pick. R.* 297, 304, *Proprs. of Canal Bridge* vs. *Gordon; Story's Agency* 49, 51, 53, 55, 247, 248; *A. & Ames on Corp.* 174, 122; 8 *Wheat.* 363, *Fleckner* vs. *U. S. Bank;* 12 *Wheat.* 64, 70, 74, *Bank U. S.* vs. *Dandridge;* 19 *Pick.* 511, *Thayer* vs. *The City of Boston.*

Was there any ratification here, so that this instrument may operate as a mortgage of the personal property? There is evidence from which it may be inferred that the money received of the Savings bank went to the use of the Bellamy Co. This is not directly proved, and seems not to be admitted in the argument. But there is nothing to contradict this evidence. It is not shown that James and Ira Haselton had not knowledge that the money was so received, and used. They did not assent to the mortgage, and had no knowledge that any authority was given to Palmer to make it. Still the money may have been used by Palmer, the agent, in the operations of the company. There is no evidence that the Bellamy Co. have ever objected to the mortgage, or that they have contested the right of possession by the Savings bank.

If the act of one professing to be authorized as agent, in the sale or mortgage of property of a corporation, be such as will admit of ratification without any formal instrument or express vote, and the consideration come to the use of the corporation, and is retained, that will be evidence of a ratification. It would clearly be so in the case of an individual. The principal cannot be permitted to appropriate the money to his own use, and disclaim the act by which it is acquired. If he take the benefit of what is thus done, he cannot reject the burthen. If an agent, on the purchase of goods, draw a bill at a shorter date than his instructions permit, the principal may disclaim the transaction; but if he claim the property, he cannot deny the agency. 2 *Shepley* 180, *Newhall* vs. *Dunlap.* A party who has received a legacy under a will, must return or tender it, in order to contest the will. 6 *N. H. Rep.* 337, *Hamblett* vs. *Hamblett; see, also, Story on Ag.*

245, 253 ; 12 *Mass. R.* 60, *Clement* vs. *Jones* ; 4 *Mason* 296, *Richmond Man. Co.* vs. *Starks ;* 8 *Cowen* 60, *Shiras* vs. *Morris.*

We are of opinion that the instrument, considered as a mortgage of the personal property, has been sufficiently rati- fied, and may avail, thus far, to the benefit of the trustees. Possession having been taken by the mortgagees, it is not necessary to enquire whether, in order to a valid record of a mortgage of chattels made by an agent, it is not necessary that the authority, or the ratification, as well as the mortgage, should be in writing and recorded.

Whether the Savings bank might not have waived the ratification, and elected to consider Palmer as their debtor, we need not determine.  8 *Wend.* 494, *Rossiter* vs. *Rossi- ter ;* 22 *Wend.* 344 ; *Story* 246.

If the Savings bank had held the goods, as trustees, at the service of the writ, a taking of them from their possession, by a wrong doer afterwards, would not discharge them ; but it might furnish a ground for delaying the proceedings, until the damages could be recovered.  5 *Pick.* 181, *Swett* vs. *Brown & Trustee.*

As was suggested, on the argument, this case might have been determined by a much shorter process.  At the time of the service of the writ, the trustees had nothing in their hands.  They had not taken possession under their mort- gage, and the mortgage itself did not charge them with the possession.  8 *N. H. Rep.* 273, *Greenleaf* vs. *Perrin & Trustee.*  When they took possession, afterwards, it was either by right, as mortgagees ; or as trespassers, if the mort- gage was invalid ; and a party who takes goods by trespass cannot be charged as the trustee of the owner, to whom the wrong is done.  But deciding the case upon this ground would, it seems, have been only to bring these questions be- fore us in another shape, and we have therefore passed upon them now, in order to save further expense to the parties.

*Trustees discharged.*