## BAKER & a. v. DAVIS & a.

Where, in the extent of an execution upon land, the wife of one of the appraisers was second cousin to the wife of one of the defendants, and the wife of an another appraiser was sister to the other defendant, it was *held* that the appraisers were, notwithstanding, "disinterested persons," within the meaning of the statute, as their relationship to the defendants was only by affinity.

Carding machines, which were fastened to the floor by nails through the legs, and operated by a band around a drum, in a room below, and through two holes in the floor, and then around a wheel, which was a part of the machines, which band could not be got off without cutting or ripping it apart, it being impossible to get the machines out of the building without taking them to pieces or taking away part of the building, and a *picker*, which was nailed strongly to the building and operated by a band, and a kettle set in a brick arch, and a clothier's press, which was an iron plate, fixed in a brick arch, on each side of which were two posts, with a beam and screw, framed and fitted into the building, the press not being any more easily moved than a part of the building, are fixtures, and pass by the extent of an execution upon land.

An exception to the copy of an extent, because it did not purport to come from the office of the clerk of the court, will be considered as waived, if not taken at the trial.

Where there was an execution against two debtors, and two of the appraisers swore that they would appraise the estate of the within-named, and in the appraisal the land is described as the estate of the *debtor*, and is described in the same way in the sheriff's return, the extent is defective, as it does not appear to whom the property belongs.

In such case, leave will be granted to move for an amendment in the court of common pleas.

DEBT on a judgment. The plaintiffs, John Baker, 2d, and Nathaniel Baker, on the fourth Tuesday of March, 1845, recovered judgment against Nathaniel A. Davis and Benjamin Wadleigh, the defendants, for the sum of $386,34, debt, and $15,25 costs, amounting in the whole to $401,59.

The defendants pleaded that on the 4th day of April, 1845, the plaintiffs sued out an execution upon the judgment, and caused it to be levied in full satisfaction thereof, and caused the writ of execution to be returned to the court of common pleas fully satisfied.

The plaintiffs replied, denying the allegations in the plea, and tendering issue thereon, which was joined.

The defendants then offered in evidence a certified copy of the execution and levies. The appraisers were Robert Lane, Reuben Porter and John Pillsbury, and the appraisal bears date October 6th, 1845.

On the 3d of May, 1845, Reuben Porter made oath that he would impartially appraise such real estate as should be shown him as the estate of the within-named *debtors.*

On the 6th of October, 1845, Lane and Pillsbury made oath that they would appraise such real estate as should be shown them as the estate of the within-named ————.

In their appraisal, the appraisers state that they have examined a tract of land, shown to them " as the estate of the within-named *debtor*," together with the buildings and carding machines, and all the other machinery now in said buildings, and that the land, &c. is of the value of $395,46.

The officer's return states that he caused three appraisers to be appointed, one of them by the *debtors* within named, &c., and that they made oath to appraise such real estate as should be shown them as the estate of the *debtor*, and that the land, &c., shown them as the estate of the said *debtor*, was of the value of $395,46, and the officer returned the execution fully satisfied.

The defendants objected to the admission of the execution and levies in evidence, on account of the defects apparent upon the levy, but the exception was overruled and the evidence admitted.

The plaintiffs offered in evidence the depositions of Robert Lane and John Pillsbury, two of the appraisers. The defendants objected to them as incompetent, but they were admitted by the court.

Lane testified that the machinery on the premises was in the factory building, and consisted of two carding machines

and other machinery, such as was used in the making and dressing cloth.

Pillsbury testified that there were two carding machines and one picker. He supposed the machinery could be moved, but whether it was fastened to the floor or not he did not know. There was also a large copper kettle set in an arch, and a fulling mill; also a press screw and two shearing machines. The press was attached to the chimney, and the screw was attached to a box, and the box was fastened to a beam over the press. The beam was supported by two posts, one on each side of the press. The shearing machines were portable, and could be removed to any part of the building. Carding machines are usually put together with screws, but he did not notice how these were put together.

The plaintiffs then introduced Reuben Porter as a witness, to whose testimony the defendants objected, but it was admitted. He testified that he appraised two carding machines, an old picker, a clothier's press, a copper kettle, and the parts of two movable shearing machines. The carding machines were fastened to the floor by nails driven through the bottom of each of the four legs, and were operated by a band around a drum in a room below, passing through two holes in the floor around a wheel, which was a part of the carding machines. The band could not be taken off without cutting or ripping it apart. The machines were about ten feet ten inches long, and about four feet ten inches wide, and could not be got out of the building without taking away a part of it, or taking the machines to pieces. He did not know whether the machines were put together with screws, or could be taken to pieces without injury.

The picker was from six to eight feet long, and about as wide as the carding machines, and, like them, was operated by a band. It was strongly nailed to the building, being confined by pieces of boards running from the picker to the posts of the building, and could not be removed from the

building without taking down part of the building, or taking the picker to pieces.

The clothier's press consisted of an iron plate fixed in a brick arch, in the lower room of the building, on each side of which were two posts, with a beam and screw over the plate, framed and finished into the building, and which could not be moved any more easily than the rest of the building.

The kettle was set in a brick arch, built from the ground.

In the course of the trial, it appeared that parts of the shearing machines were of no value, and were not taken into the account by the appraisers.

It was objected that Pillsbury and Porter were too nearly connected with the defendants to be competent appraisers. It appeared that Mrs. Pillsbury was a sister of Wadleigh, one of the debtors, and Davis, the other debtor, married a daughter of Wadleigh. Mrs. Porter's mother was a sister of Wadleigh's father. Porter stated that his wife was second cousin of Davis' wife, and a cousin of Wadleigh's wife.

The defendants proved that on the 21st of August, 1836, Wadleigh quitclaimed to Davis all his interest in the property levied upon.

It was contended that the land set off and appraised amounted to a larger sum than the debt by over twelve dollars.

A verdict was taken, by consent, for the plaintiffs, for the amount of the execution and interest, deducting therefrom $32,50 paid upon the execution on the 4th of October, 1845. Judgment is to be rendered thereon, or the verdict is to be set aside and judgment rendered for the defendants, according to the opinion of the superior court.

*Porter*, for the plaintiffs.

The levy was so defective that nothing passed by it. The

plaintiffs may have a new execution, whether the defects be apparent upon the face of the levy or not. *Burnham* v. *Coffin*, 8 N. H. Rep. 114.

1. The first defect is that the appraisers made oath that they would appraise such estate as should be shown them as the estate of the within-named ——, without giving the names of the owners.

In the appraisal, the land is described as the estate of the within-named *debtor*, when there were two debtors, without saying to whom the land belonged.

2. The carding machines were personal property. The levy does not show how they were attached to the land.

3. The appraisal states that "the same tract of land, &c." is of the value of $395,46. The appraisers have set off "the same land, &c." by metes and bounds. There were several buildings on the land, and it does not appear which building they intended.

4. The land was set off to a larger amount than the debt.

5. It does not appear by which of the debtors Porter, the appraiser, was chosen. *Cogswell* v. *Mason*, 9 N. H. Rep. 48.

6. As to the question whether any of the machinery was a fixture, we refer to 12 N. H. Rep. 205; 17 Johns. 116; 4 Term 567.

7. The appraisers were not disinterested persons. Porter's wife's mother is sister to one of the debtors. 1 N. H. Rep. 362; 1 Sellon's Prac. 460; 3 Black. Com. 363; Co. Litt. 157, b.

*Stickney,* for the defendants.

1. The oath was to appraise the estate as the property of the within-named ——. This defect is cured by the return of the officer.

2. It does not appear from the proceedings that any part

of the machinery was personal property. It can not be pre-sumed to have been so.

3. The set off is of the land, buildings, &c. The &c. refers to and includes all that precedes it.

4. We cannot ascertain in what particular the sum for which the land was set off was too large.

5. The land was owned by one only of the debtors, and the presumtion is that he appointed the appraiser, and that the land was taken as his property alone.

6. The exception as to fixtures is not open to the plain-tiffs. They have taken possession of all that was levied upon. The question is, whether the machinery be essential to the business carried on upon the land. No part of it can be regarded as personal property.

7. The relationship is too distant to make the appraisers interested persons. It does not affect the title of the plain-tiffs, for the defendants could not avoid the levy. It is still valid as between the parties.

*Porter,* in reply.

The appraisers may have been influenced by the relation-ship, in estimating the value of the property. To this posi-tion it is no answer to say that the plaintiffs may hold the property against the defendants. It does not remedy the defect.

We contend, also, that the copy of the levy offered in evidence is insufficient. It does not purport to come from the office of the clerk of the court. There is no certificate upon it to that effect.

*Stickney.* No exception for the want of a certificate was taken at the trial, and it must now be considered as waived.

Gilchrist, C. J. It is contended that Porter and Pills-bury, two of the appraisers, were not disinterested persons. The officer returns that Reuben Porter was chosen by the

Baker *v.* Davis.

debtors, and John Pillsbury by himself. Porter's wife is second cousin to Davis' wife. Pillsbury's wife is sister to Wadleigh, the defendant, and Davis' wife is Wadleigh's daughter, so that Wadleigh is Pillsbury's brother-in-law, Mrs. Pillsbury thus being aunt to Mrs. Davis.

A justice is not disqualified because he is half uncle to the plaintiff's wife. *Eggleston* v. *Smiley*, 17 Johns. 133.

Where a magistrate is uncle to one of the parties, he cannot act. *Gear* v. *Smith*, 9 N. H. Rep. 65; *Allen* v. *Bruce*, 12 N. H. Rep. 422.

The parties are related only by affinity. Affinity always arises by the marriage of one of the parties so related; as a husband is related by affinity to all the *consanguinei* of his wife; and *vice versa* the wife to the husband's *consanguinei;* and those who are related to the one by blood are related to the other by affinity. But the *consanguinei* of the husband are not at all related to the *consanguinei* of the wife. So a man is related to his wife's brother by affinity, but he is not so to his wife's brother's wife, whom, if circumstances would admit, it would not be unlawful for him to marry. 1 Black. Com. 435.

The only relationship here is by affinity, and that is too remote to be a valid objection. We do not find any authorities which go far enough to authorize us to say that the appraisers were not disinterested persons, within the meaning of the statute.

The most important question in the case is that relating to the fixtures. If the machinery, or any part of it, were personal property, the extent was invalid. Porter says the carding machines were fastened to the floor by nails driven through the legs. The picker was strongly nailed to the building. The posts of the press were framed into the building. The shearing machines were portable, but they were not appraised.

Porter's description of the carding machines is, that they were fastened to the floor by nails through the legs, and

were operated by a band around a drum, in the room below, and through two holes in the floor, and then around a wheel which was part of the machines. The band could not be got off without cutting or ripping it apart. They could not be got out of the building without taking them to pieces, or taking away part of the building.

There is scarcely any question in the law, where it is more difficult to ascertain the proper principle to be applied than in the numerous cases arising under the law of fixtures. In the case of *Walker* v. *Sherman*, 20 Wendell 636, there is a very careful and discriminating analysis of the decisions upon this subject. After commenting upon numerous cases, Mr. Justice *Cowen* says, (Ibid 655,) " On the whole, I collect from the cases cited, and others, that, as a general rule, in order to come within the operation of a deed conveying the freehold, whether by metes and bounds of a plantation, farm or lot, &c., or in terms denoting a mill or factory, &c., nothing of a nature personal in itself will pass, unless it be brought within the denomination of a fixture, by being in some way permanently, at least habitually, attached to the land or some building upon it. It need not be constantly fastened. It need not be so fixed that detaching will disturb the earth or rend any part of the building. I am not prepared to deny that a machine, moveable in itself, would become a fixture from being connected in its operations by bands, or in any other way, with the permanent machinery, though it might be detached and restored to its ordinary place, as easily as the chain in *Farrar* v. *Stackpole*, 6 Greenl. 154. I think it would be a fixture, notwithstanding. But I am unable to discover from the papers before us, that any of the machines in question before the commissioners were even slightly connected with the freehold. For aught I can learn, they were all worked by horses or by hand, having no more respect to any particular part of the building, or its water-wheel, than the ordinary moveable tools of such an establishment. These

would have their common place, and be essential to its business. So of a threshing machine, and the other implements of a farmer. But it would be a solecism to call them fixtures, where they·are not steadily or commonly attached, even by bands or hooks, to any part of the realty. The word *fixtures* is derived from the things signified by it being *fixed*. It is a maxim of great antiquity, that whatever is *fixed* to the realty is thereby made a part of the realty to which it adheres, and partakes of all its incidents and properties." Toml. Law Dict. Fixtures. Hence, *fixtures* are defined to be " chattels or articles of a personal nature, which have been affixed to the land." Ib. " It is an ancient principle of law," says *Weston*, J., in *Farrar* v. *Stackpole*, " that certain things which in their nature are personal property, when *attached* to the realty, become part of it as *fixtures*." Amos & Fer. on Fixt., ch. 1, p. 1. The ancient distinction between actual annexation and total disconnection, is the most certain and practical, and should therefore be maintained, except when plain authority or usage has created exceptions. Ibid. 653.

In the case of *Gale* v. *Ward*, 14 Mass. 352, the owner of the freehold had carding machines in his woollen factory, " not nailed to the floor, nor in any manner attached or annexed to the building, unless it was by the leather band which passed over the wheel or pulley, as it is called, to give motion to the machines. This band might be slipped off the pulley by hand, and it was taken off, and the machines removed from time to time, when they were repaired. Each machine was so heavy as to require four men to move it on the floor, and was too large to be taken out at the door. But it was so constructed as to be easily unscrewed and taken to pieces; and the machines were so taken in pieces when removed by the deputy sheriff. He had levied upon them as being the personal property of the freeholder, entirely distinct from the realty." *Parker*, C. J., said: " They must be considered as personal property, because, although in

some sense attached to the freehold, yet they could easily be disconnected, and were capable of being used in any other building erected for similar purposes. It is true, the relaxation of the ancient doctrine respecting fixtures has been in favor of tenants against landlords; but the principle is correct in every point of view." *Union Bank* v. *Emerson*, 15 Mass. 159; *Whiting* v. *Brastow*, 4 Pick. 310.

The case of *Gale* v. *Ward*, 14 Mass. 354, was properly doubted by this court, in *Kittredge* v. *Woods*, 3 N. H. Rep. 506. The carding machines in that case were fastened by nails to the floor, at the time of the attachment, and, although there are cases which go as far, perhaps, as *Gale* v. *Ward*, in making things moveable in their nature, personal property, yet, in our judgment, the rule stated in *Walker* v. *Sherman* is the better one.

The decision in the case last cited would include in this case the carding machines, the picker, which was nailed strongly to the building, and operated by a band, and the kettle set in a brick arch, which would be a fixture on the authority of the *Despatch Line of Packets* v. *Bellamy Man. Co.*, 12 N. H. Rep. 233, and also the clothier's press, which was an iron plate fixed in a brick arch, on each side of which were two posts, with a beam and screw framed and fitted into the building, and could not be moved any more easily than a part of the building.

It is contended that the land was set off for a larger sum than the amount of the debt. Whether this be so or not, can be very shortly and easily determined.

The judgment was rendered April 3d, 1845.

| | | |
|---|---|---|
| Debt, ................................... | | $386 34 |
| Costs,......................... | $15 25 | |
| Execution,..................... | 17 | |
| | | 15 42 |
| | | $401 76 |

Baker *v.* Davis.

Fees on levy,.............,................... 13 95
                                        _____
                                        $415 71

The land was appraised at $395 46, and was set off at that sum, in full satisfaction of the execution and the officer's fees, on the 6th of October, 1845.

Amount of debt and costs,..................$401 76
Interest from the 3d of April to the 6th of October, 1845, ............................. 12 25
Fees on levy,................................ 13 95
                                        _____
                                        $427 96
Amount of appraisal, ............$395 46
Endorsement, Oct. 4, 1845,......... 32 50
                                ——— $427 96

The counsel for the plaintiff contends that the land was set off to a larger amount than the debt, by more than twelve dollars, and that if this can be accounted for by casting the interest, it should so appear. But this is not necessary. Revised Statutes 388, § 6, allows interest on all executions, from the time judgment was rendered; and this exception must be overruled.

It is contended, also, that the copy of the levy offered in evidence is incompetent, because it does not purport to come from the office of the clerk of the court. The fact is as alleged. The copy should have come from the office of the clerk of the court for the county of Merrimack, whereas it comes from the office of the register of deeds; but no question was made at the trial, when the difficulty might have been remedied, and the exception must be considered as waived.

It is alleged that the levy is defective, on account of the manner in which the defendants are referred to.

The property belonged to one only of the debtors, Davis.

Porter, one of the appraisers, swears that he will appraise the real estate of the within named *debtors*.

Baker *v.* Davis.

Lane and Pillsbury swear that they will appraise the estate of the within named ———.

In the appraisal, they describe the land as the estate of the within named *debtor*.

In the return, the sheriff describes the land as having been shown the appraisers as the estate of the *debtor*, and that the land shown them as the estate of the *debtor*, he had set off by metes and bounds, &c.

Thus it appears that two of the appraisers speak only of the estate of the within named ———.

All of them describe the land as that of the *debtor*, and it is so referred to in the return.

It may be said that although the appraisers use the word " debtors," and the words " within named," which refer to both, as there are two debtors, yet the return must govern, and that is correct; that as the land belonged to one of the debtors, the creditor acquired a title to it, whichever owned it; and that his title would be no better, though perhaps easier of proof, if the name of the owner had been given.

But as between the defendants, the return would show that each of them contributed one-half of the debt.

The return does not give notice to the world whose property has been taken. Creditors could not inform themselves of the state of the title, by examining the records. They could not ascertain whether the property of the one or the other had been taken. This, if the defendants were numerous, would be a matter of serious inconvenience. The return would show only that the property of some one of the defendants had been taken. As the case now stands, this exception must be sustained, and there must be judgment on the verdict. But the extent of the execution may be so amended as to obviate this exception. The plaintiffs cannot, with propriety, ask that they should recover because their agent has made a mistake. No one has intervened as yet between the creditor and the defendants. R. S. 376, § 11.

We shall give the defendants leave to move in the court of common pleas that the extent should be amended.