# CHESHIRE,

## DECEMBER TERM, A. D. 1851.

---

### LATHROP v. BLAKE & a.

A sheriff, by a seizure of goods upon mesne process or execution, acquires a special property therein, founded upon his responsibility for the safe custody thereof.

In such case, trover is a proper form of remedy in favor of the officer against a wrong-doer for a conversion of the goods.

Whether the leaving of a copy of the writ, with the officer's return thereon, with the town clerk of the town in which the property is situated, will of itself alone, without first otherwise attaching the goods, constitute a sufficient and valid attachment thereof, or whether the leaving of the copy with the town clerk is only equivalent to retaining the actual custody of the goods attached by the officer, or his agent, after a sufficient attachment has been made, by an actual seizure, and can have that effect only, *quære ?*

An officer's return of an attachment of personal property, is equivalent to a return of all the facts and acts neccessary to constitute a valid attachment, and in the absence of fraud is conclusive evidence of the fact of the attachment.

The actual use of, and exercise of acts of ownership over property attached, after the attachment, under a claim of right of property and right of possession, and an assertion of such right, at the time of the demand of the property by the officer, is competent evidence of a conversion by the person asserting such right.

Where an agent of a bank was clothed " with full power to dispose of the interest of the bank in the property belonging to the bank, both real and personal, and in the name of the bank, and for their benefit to make, execute, &c., any deed or deeds, of all or any portion of the real estate of said bank, and in general to manage and dispose of the interest of the bank in said property at his best discretion," and the agent sold and conveyed a paper mill and the machinery, and the purchaser made his five promissory notes in payment thereof, payable to the agent or bearer, for the benefit of the bank, and also a mortgage of the machinery to secure the payment of the notes accompanied by the affidavit of the agent and the purchaser, in the usual form, ver-

Lathrop *v.* Blake.

ifying the justice of the debt as due and owing from the purchaser to the agent; it was *held,* that, under the power conferred, the notes and mortgage were properly taken in the name of the agent; that within the provisions of the act requiring an affidavit by the mortgager and mortgagee to accompany the mortgage, the agent was a proper party thereto, and that notwithstanding the fact that he was only a payee and mortgagee in trust, the affidavit was true, and the justice of the debt was sufficiently verified, and the mortgage valid, both as between the parties and as against the creditors of the mortgager.

Where in a deed of mortgage the property was described as being " the following goods and chattels now in and about the paper-mill in Alstead, occupied by me," &c., " viz: one paper machine, sizer, dryer, cutter, and all apparatus belonging thereto," &c.; and it appeared in evidence that there is an instrument attached to a paper machine called a cutter, and that there is also a machine used in paper-mills which is not attached to the paper-machine, called a rag-cutter, and that the last mentioned machine is sometimes called a cutter, and that there was a rag-cutter in use in said mill at the date of the deed, it was *held* that the terms of the deed were equally applicable to each of said instruments, called cutter and rag-cutter; that the evidence shewed a case of a latent ambiguity, and that it was competent to shew by parol, that by the term cutter, in the deed, was intended the rag-cutter, and the same was sufficiently described in the deed and passed by force of its terms.

Where in a mortgage deed the premises were described as certain land " with a paper-mill," &c., " thereon, and water privilege appurtenant," together " with all its privileges and appurtenances," &c.; and at the date of the deed there was certain machinery in use in said mill, in the manufacture of paper, placed there and necessary for that purpose, and it stood upon the floor of the mill, and the feet of the machinery which rested upon the floor were fastened down by means of iron bolts passing through the floor, as well as through certain timbers placed beneath the floor, and there were nuts upon the lower ends of some of the bolts, and the machinery was further attached to the mill by means of bands passing over the wheel and pulley, and operating the machinery; but said bolts could, without difficulty be removed, and the machinery without being taken in pieces and without injury or prejudice *to itself* or the building could be removed therefrom, and was capable of being used in other paper-mills,—it was *held,* that the machinery passed by the deed of the land and mill, as a part thereof.

TROVER, for certain machinery described in the declaration as follows, viz: a certain paper machine, with the apparatus thereto belonging; one paper-sizer; one paper-dryer; one paper-calender; one trimming machine, and one rag-cutter.

It appeared, and was admitted, that Walter Tufts, on Jan. 9th, 1844, was the owner of a paper-mill, in Alstead, in this State, and that the machinery in controversy was in use in said mill for the purpose of manufacturing paper, and it still remained in said

mill until March 31st, 1847.    At that time the plaintiff was a dep-
uty sheriff, and as such, and by virtue of a writ of attachment
in favor of Thomas R. Prentiss against Walter Tufts, on that
day attached all the machinery described is said declaration, as
the property of said Tufts, and left an attested copy of the writ
and of his return with the town clerk of Alstead, in conformity
with the provisions of § 14, chap. 184, Rev. Stat.

To prove a conversion of the property by the defendants, the
plaintiff introduced John R. Dickinson, who testified that he
was present when the plaintiff, having an execution, issued upon
a judgment rendered in said action, Prentiss *v.* Tufts, on May
4th, 1848, demanded the aforesaid machinery, specifying the
same, of the defendants.    The defendants were both present,
and Blake, one of them, said, in reply to said demand — " We
shall not resist you in any course you may see fit to take ; our
mill is open ; we claim the property from a sale ; if you see fit,
you can take the property you demand ; we shall not resist you ;
we shall seek our remedy by due course of law."

The witness further testified that on the sixth of May, 1848,
the plaintiff and the witness went to the office of Mr. Wait, and
Mr. Chandler one of the defendants, was there ; and that the
plaintiff said to Chandler, " Have you any objections to my
selling the machinery demanded of you on the fourth of May, in-
stant," and his answer was, " I shall not say anything about
it ; if you sell, we shall seek our remedy for the machinery and
damages."

The above two conversations were had at Mr. Wait's office,
a distance of twenty rods from the machinery ; and the last one
occurred on the thirtieth day, after the day of the judgment in
said action.

Samuel S. Vilas, a witness introduced by the plaintiff, testified
that John Blake, one of the defendants, was carrying on the
works, on May 4, 1848.

The defendants objected to the sufficiency of the foregoing
evidence to shew a conversion; and the question was reserved.

The defendants, in defence, gave evidence of title to said ma-
chinery, in themselves, as follows, viz:

Lathrop *v.* Blake.

1.  A copy from the records of the Cheshire bank, of October 31st, 1842, of the appointment of Calvin Page, as agent of said bank, for certain purposes and with certain powers, which more fully appear in the opinion of the court.

2.  A mortgage deed, from Walter Tufts, to Calvin Page, dated January 9th, 1844, purporting to convey certain machinery in the mill, more fully set forth in the opinion.

3.  An assignment of said mortgage, from Calvin Page to the Cheshire bank, dated January 30th, 1844.

4.  Five notes of hand, being the same described in said mortgage — the execution of which was admitted; and it was admitted that the notes were taken for the benefit of the Cheshire bank; and that Page was acting therein, under his aforesaid agency.

The execution of said mortgage by Tufts was admitted, but its validity was excepted to as a mortgage of personal property to Page, to secure a debt the property of the bank, and as not being accompanied by the oath of the mortgagee. The question was reserved.

5.  A mortgage deed, Walter Tufts to the Cheshire bank, dated January 9th, 1844, conveying certain land with said paper-mill, with all its privileges and appurtenances, with the usual covenants of warranty. This mortgage was given to secure the same notes that are described in said mortgage from Tufts to Page.

6.  A copy of the record of a vote of the stockholders of the Cheshire bank, at a meeting duly holden, Feb. 17th, 1847, assigning all notes, judgments, securities, mortgages and assets of the bank to Levi Chamberlain, in trust, to collect, or sell and dispose of, and from the avails, first, to pay all the debts of said bank, and to divide the residue among the stockholders.

7.  A copy of the record of a vote of said bank, authorizing Hon. Salma Hale, in behalf of said bank, to execute to said Chamberlain all necessary deeds, instruments and papers, to enable said Chamberlain to execute said trust.

8.  An assignment from Salma Hale, as agent of said bank, to Levi Chamberlain, dated February 17th, 1847.

9.   An assignment, from Levi Chamberlain to the defendants, dated October 14th, 1847.

It was admitted that Thomas R. Prentiss, the creditor, at whose suit the property in controversy was attached, is a witness to the aforesaid two mortgages from Tufts to Page, and to the bank.

It appeared, in evidence, that there is an instrument attached to a paper-machine, called a cutter.   There is, also, a machine used in paper-mills, which is not attached to the paper-machine, called a rag-cutter.   The last mentioned machine, is sometimes called a *cutter.*   It was admitted that, if parol evidence be admissible for that purpose, it would appear that, by the term *cutter*, in the deed from Tufts to Page, was intended the *rag-cutter* in use at said mill.   The question was reserved.

The aforesaid machinery, at the date of said mortgage of said paper-mill, and at the time when it was attached, stood upon the floor of the mill, and the feet, which rested upon the floor, were fastened down by means of iron bolts passing through the floor as well as through certain timbers beneath the floor, and there were nuts upon the lower ends of some of the bolts.   The machinery was also attached to the mill by means of bands passing over the wheel or pulley, and operating the said machinery. The said bolts could, without difficulty, be removed, and the machinery could, without being taken in pieces, and without injury or prejudice to itself or the building, be removed therefrom, and was capable of being used in other paper-mills.   The value of all the machinery attached was agreed to be $600.00.   The value of the rag-cutter was agreed to be  $33.00.   If the defendants are liable only for damages occasioned by the use made of the machinery, after the attachment and prior to the demand upon the defendants, it was agreed that those damages were five dollars.

A verdict was taken, by consent, for the plaintiff, for $600.00, subject to the opinion of the superior court; and it was agreed that judgment should be rendered thereon, or the same should be set aside, or altered or amended, according to the opinion of the court upon the foregoing case; and in case the verdict be set aside, judgment to be entered for the defendants for their costs.

Lathrop v. Blake.

*Cushing* for the plaintiff.

1. The mortgage from Walter Tufts to the Cheshire bank, was void against attaching creditors, because the oath that the debt was due to the mortgagee is admitted to be not according to the fact.

2. The machinery having been duly attached by the plaintiff, on the writ of Prentiss, the bank could not rightfully sell, nor could the defendants rightfully buy, after the attachment, of which all the world had notice.

The property was attached March 31, 1847, and the purchase of the property was made on the fourteenth day of October, 1847. The taking possession, and usage of the property, by the defendants, were all acts amounting to a conversion, unless their effect has been done away. *McCombie* v. *Davis*, 6 East., 538 ; *Gibbs* v. *Chase*, 10 Mass.,125; *Yates* v. *Camsen*, 3 C. & P., 99.

On the fourth of May, 1848, and also on the sixth of the same month, the plaintiff demanded the property. The defendants had then an opportunity to explain their acts. Their declaration that the property was theirs, by purchase, that they would not resist the officer in the execution of his office, but should pursue their remedy by law, explained their previous acts, and showed that there could be nothing but a conversion. But they did not offer to restore the property. The plaintiff, with the execution of Prentiss in his hands, demanded the property. The answer was substantially this : the property belongs to us, we shall not resist you in the execution of your process, but if you touch our property we will sue you.

3. It is said that the plaintiff is in no situation to maintain trover. He had made an attachment, and having left a copy of the writ with a copy of his return thereon, at the office of the town clerk, he was, by the statute, in the same situation as if he had " *retained possession* " of the property. Rev. Stat., chapter 384., § 14.

4. It is said that the action cannot be maintained against Chandler. The case shows that he purchased with Blake, that he used the property with Blake, from the time of the purchase

to the time of the demand, and that he then claimed to own the property.

5. The ambiguity about the rag-cutter was *patent*. If there had been several things in the mill known by the name of cutter, the ambiguity would have been latent till made to appear by testimony. But the ambiguity arises on the construction of the instrument. Is the *cutter* the same machine already conveyed as part of the paper-machine, and again more specifically enumerated, or is it a separate article?

6. The machinery was not a part of the freehold, but was personal property, and did not pass, except by virtue of the mortgage of personal property.

*Wait*, with whom was Wheeler, for the defendants.

1. The defendants, at the time the attachment was made, had a valid title to the machinery which is the subject of this action. There is no pretence that the mortgage of the machinery from Tufts to Page was not executed in good faith, and for a sufficient consideration. Page, being the authorized agent of the bank, took that method to secure a debt due from Tufts to the bank.

2. If the conveyances are sufficient to give to the defendants a title to any part of the machinery demanded, it gave them a title equally to the *rag-cutter*, unless parol evidence to shew that by the term " *cutter*," in the deed from Tufts to Page, was meant the *rag-cutter* in use in the mill, is to be excluded.

This, it is submitted, is a case of a mere latent ambiguity, and not to be distinguished from many of the cases in the books where parol evidence has been admitted in explanation. *Bartlett* v. *Nottingham*, 8 N. H. Rep., 300, and cases there cited.

The doubt here arises, not from anything upon the face of the deed, but from evidence wholly extrinsic. The evidence is offered to show the particular subject matter to which the deed relates, there being two subjects to which the language might apply.

And hence should the mortgage from Tufts to Page be sustained, the plaintiff is not entitled to judgment for the value of

the *rag-cutter*, more than for the other parts of the machinery.

3.   But however it may be as to the defendants' title to the machinery, it is submitted that the plaintiff has no such title to it as would enable him to maintain *trover* to recover its value.

The general principle, deduceable from the authorities, is, that in order to enable a party to maintain trover, he must, at the time of the alleged conversion, have had a *property*, either general or special, in the goods alleged to have been converted; and he must also have had the *actual possession*, or the *right* to *immediate possession*.   1 Chitty's Pl., 150 ; 2 Selwyn's Nisi Prius, 1265 ; 2 Greenl. Ev., § 640 ; *Pyne* v. *Doe*, 1 Term. Rep., 55 ; *Sargent* v. *Gile*, 8 N. H. Rep., 331 ; *Pinkham* v. *Gear*, 3 N. H. Rep., 484.

Actual possession of a chattel is sufficient to enable a party to maintain trover against a stranger to the title who should dispossess him.   But this is on the ground that actual possession is *primâ faciê* evidence of property.   *Pinkham* v. *Gear*, 3 N. H. Rep., 484, and cases there cited.

And it is submitted that this right to immediate possession, so as to enable the party to maintain this action, must flow from a right of *property* in the chattel converted, or from an interest in it; *ex. gr.*, the case of a factor or consignee, before the goods have been actually received by him, or taken into his actual possession, and while they are upon their transit, as mentioned by *Eyre, C. J.*, in *Fowler* v. *Downs*, 1 Bos. & Pul., 47.

A right *to take* possession of property, in the execution of an official duty, can surely constitute no such title as to enable one to maintain trover.

In this case the plaintiff, being a deputy sheriff, attached the property in question, by leaving a copy of the writ, and also of the return of the attachment, with the town clerk ; and brings this action against the defendants, being purchasers of the property, for not delivering it to him on his demand.

It is submitted that the attachment of personal property, by leaving a copy of the writ, with the return of the attachment, with the town clerk, gives the officer no possession of the property, either actual or constructive.   At most, it can be only a

constructive possession. The statute contemplates nothing more than a constructive possession, which provides that an attachment made by copy (in the proper cases for such an attachment,) " shall not be dissolved or defeated by any neglect of the officer to *retain actual possession* of the property." Rev. Stat., chap., 184, § 14. And such an attachment can lay no person under obligation to deliver it to him, on his demand. The only effect it can have is to give him a right, in preference to any other, to levy such execution as may be obtained in the action, upon the property so attached, if he does it within thirty days after judgment: the time limited by statute. But the mere right to levy an execution, in preference to others, can constitute no possession, either actual or constructive.

It is true that the officer had a *right to take possession* of the property in question; but this was a right flowing from his official character, rather than from any title to, or interest, in the property — and the same may be said of any other property of the judgment debtor — the officer holding the execution may take possession of it for the purpose of making a levy; but he can call upon no one to deliver it to him. And an attachment by copy only gives him this right, in preference to any other execution creditor or subsequent purchaser, within the time limited by statute.

Right of immediate possession of property, so as to enable a person to maintain *trover* on a demand and refusal, must be accompanied by the *right of property*, or an interest in the same; which the officer in this case had not.

Very different from the present is the case where property is receipted, and by the receipter promised to be delivered to the officer on demand, as in *Cargill* v. *Webb*, 10 N. H. Rep., 199 ; *Pinkham* v. *Gear*, 3 N. H. Rep., 484.

But allowing that the officer could be considered, by virtue of the attachment, as constructively in possession of the property, and that his title otherwise was such as to enable him to maintain trover for any actual conversion of the property, he had no right to call upon the defendants to deliver it to him. And hence a refusal by them, to deliver it to him on his demand, could

be no evidence of a conversion. It is only where a person is bound to deliver property on demand, that his refusal is evidence of a conversion.

The officer having the right, by virtue of his office, and the execution which he held, and the former attachment, to take possession of the property, for the purpose of levying the execution, he should have proceeded to execute his duty; and if the defendants had obstructed him, in this exercise of his official duty, they would have become liable to the penalties of the law in such case provided.

4. · But however the plaintiff's title may be, there was in this case no such *refusal* by the defendants as to furnish evidence of a conversion. They offered to allow the plaintiff to take it away, protesting that they had a title to it. They waived no rights that the law gave them. They merely claimed what the law vested in them; and this any one may do without subjecting himself to an action. All the officer had a right to demand of them was a right to proceed to levy his execution upon the property. And this they offered to permit him to do.

5. There having been no such refusal, in this case, as shews a conversion, a remaining question is, (supposing the plaintiff, by virtue of the attachment, to have had a sufficient title to enable him to maintain trover,) was there any *actual conversion,* independent of a refusal to deliver?

It is submitted that an attachment of property by copy, under the statute, does not so divest it from the person in possession of it as to preclude him from the right to use it; unless it be property of that nature that no use could be made of it short of a destruction. Were it otherwise, persons in possession of property, however innocently, might become liable for the conversion of it, without suspecting that they were pursuing a course the propriety of which could be questioned. Should he become liable at all, for the use of the property after the attachment, he must become equally so immediately upon the attachment being made, if he should happen to be using it at the time. And he would thus become guilty of a conversion of it, without the possibility of knowing the liability which he was incurring.

6. But allowing that the use of the machinery by the defendants, while it was under attachment, is to be regarded as a conversion, there having been an offer to return it to the plaintiff on his demand, this must go in mitigation of the damages to the full value of the machinery, at the time the demand was made. And the plaintiff can be entitled, at most, to recover the amount of damage done to the machinery, by being used by the defendants before the demand was made : in this case five dollars, by agreement of the parties.

But it is believed that there is no sound reason which will permit the plaintiff to recover, for damage done to the machinery by use, unless he can sustain a claim to the whole property.

The officer can sustain no claim for anything, except such as could be made available to apply upon the execution which he held. But he did, when he neglected to seize the property within the thirty days after the judgment was rendered, as he might have done, abandon all right to the property arising from the prior attachment. And having abandoned the property itself, it must be entirely immaterial to him whether it has depreciated in value or not. It could be made, in no case, to pay anything upon the execution ; which was the only purpose for which the officer had any interest, or could lay any claim to the property.

7. But in any event there can be no ground on which to charge the defendant, Chandler, in this action. He was not in possession of the machinery, and could, upon no principle, be required to deliver it on the demand of the plaintiff. Even should the use of the machinery, before the demand, be deemed a conversion of it, and thus the verdict be sustained for the damage thus occasioned, it ought to be sustained to this extent only against the defendant Blake, and should be set aside as against Chandler.

Woods, J. It has long been the declared doctrine of this court, that a sheriff, who has seized goods upon mense process, or upon execution, has a special property therein ; and it is founded upon his responsibility for the safe custody of them. *Poole* v. *Simonds*, 1 N. H. Rep., 289 ; *Odiorne* v. *Colley*, 2

Lathrop v. Blake.

do., 66. A similar doctrine is holden in other jurisdictions. 12 Johns. Rep., 403 ; 6 do., 195 ; 2 Saund. 47.

And it is entirely clear that the action adopted in the present case is a proper form of remedy for redress of the injury complained of, if the attachment be regarded as a valid one, and the property as belonging to Tufts at the date of the attachment ; for in that case the plaintiff would have acquired a special property in the machinery, as well as a right to the immediate possession of it, which would enable him to maintain trover. *Odiorne* v. *Colley*, before cited.

The case finds that the property was attached by the plaintiff, and a copy of the writ and officer's return was left with the town clerk of Alstead, in conformity with the provisions of the Rev. Stat., chap., 184, § 14.

Whether the leaving of such copy with the town clerk alone, without first otherwise attaching the goods, will constitute a sufficient and valid attachment of personal chattels, or whether the leaving of a copy with the town clerk is only equivalent to retaining the actual custody of the goods attached by the officer, or his agent, after a sufficient attachment has been made, and can have that effect only, are questions which may deserve consideration when they arise, but which need not be determined at this time.

Here the officer has returned an attachment of the property, and that is equivalent to a return of all the facts and acts done which are required to constitute a valid attachment of personal property ; and that is sufficient, and in the absence of fraud, is conclusive of the fact of the attachment. *Brown* v. *Davis*, 9 N. H. Rep., 76.

We are inclined to think that the case furnishes competent evidence of a conversion. Here was an actual use and exercise of ownership over the property by the defendants, after the attachment, under a claim of a right of property, and right of possession. And the claim was asserted, and the right exercised at the time of the demand made by the officer. The works were managed, and the property was claimed by both of the defendants. So the plaintiff is entitled to recover unless the property

is shown to have passed by the deed of Tufts to Page, or of Tufts to the Cheshire bank.

But we regard the deed of mortgage from Walter Tufts to Calvin Page, of January 9, 1844, as being a valid mortgage, conveying to Page a valid title to all the personal property described therein.

We think the exceptions taken to its validity cannot prevail. Its validity is questioned and excepted to upon two grounds.

The first is that the mortgage was given to Page to secure a debt which belonged and was due to the Cheshire bank. And the second, that the mortgage was not accompanied by the oath of the mortgagee. At the date of the mortgage, Page was acting as the agent of the bank, " with full power to dispose of the interest of the bank in the property belonging to the bank, both real and personal, at the Paper Mill Village, so called, in Alstead. And in the name of the bank, and for their benefit, to make, execute, &c., any deed or deeds of all or any portion of the real estate of said bank in said village, and in general to manage and dispose of the interest of the bank in said property at his best discretion."

With these plenary powers, Page, it would seem, conveyed the mill and machinery to Walter Tufts in the name of the bank, and thereupon Tufts executed his five promissory notes to said Page or bearer, for the benefit of the bank, together with a mortgage of the machinery, accompanied by the oath of Tufts and Page, in the usual form, verifying the justice of the debt as being honestly due and owing from Tufts to Page. Now how stands the fact ? Who was the mortgagee in this case, and to whom was the debt due ; and who should have taken the oath required to render the mortgage valid ?

It is not doubted, that Page, acting under the broad powers conferred upon him " to manage and dispose of the interest of the bank in the property at his best discretion," was well warranted in the taking of the notes running to himself or bearer, together with a mortgage to himself to secure the notes, so far as the parties to the transaction are concerned.

But it is insisted that the oath that the debt was due from

Tufts to Page, the mortgagee, is not true ; and is so shown, and for that cause the mortgage is void.

It is not questioned that the debt is justly due from Tufts to some one ; nor that if the mortgage had been taken to the bank, and the debt had been stated to have been due to the bank, the oath of Page, the agent of the bank, would have been a sufficient verification of the fact.

But is it not true, according to the requirements of the statute, that the debt was so far due to Page that he might well, and with propriety and truth, testify that it was due to himself ?

Is not the oath true ; and is not the certificate verified by a party so far interested in the debt that it may be treated as due to him ?

The notes were payable to Page. He had proper authority to take them payable in that manner. Were they not due to him, as between the parties, in the eye of the law ? It is true that he held the notes and the interest under the mortgage, as the trustee and agent of the bank.

But nevertheless, the debt was due to him in that capacity ; and well might he, under such circumstances, we think, make oath that the same were just debts, due and owing to him. They were just debts, due and owing and payable to him ; and although as trustee in fact, nevertheless the oath is true and sufficient, according to the requirements of the act. Page might have maintained an action, in his own name, upon the notes if not paid at maturity. The great object of the statute is the verification of the justice of the debt, as the debt of the mortgager ; but whether it be due to the mortgagee as absolute owner, or only as trustee, can make no difference. If the mortgage be made to the actual proprietor of the debt, excepting in the case of a corporation, he, as well as the debtor, must verify its justice ; but if the securities be taken to the trustee, he may be made a party to the verification.

A different doctrine would never allow a trustee to secure the money of his *cestui que trust* by a mortgage of personal property otherwise than in the name of the *cestui que trust ;* and of course in all cases of incapacity on the part of the *cestui que*

*trust*, the trustee could not thus secure it at all. We are therefore all clearly of the opinion that the mortgage was valid, and conveyed to Page all the property sufficiently described therein; not only as between the parties, but as against the creditors of Tufts.

It is not questioned, that the mortgage, if well executed and verified, passed a title to all the property, by a sufficient description, excepting the article called the rag-cutter. It is contended however that that did not pass under the deed, for the reason that it was not sufficiently described.

The case finds that it was intended to pass the title to that article of machinery as well as the rest, provided parol evidence be competent to show such intention. If the facts furnish a case of a latent ambiguity, then the evidence was admissible, if not, it was inadmissible. *Jones* v. *Newman*, 1 W. Black. Rep., 60; *Thomas* v. *Thomas*, 6 D. & E., 671; *Claremont* v. *Carlton*, 2 N. H. Rep., 369.

The rule on this subject laid down by Lord *Bacon*, and which has come to us approved by learned commentators and jurists, is thus stated, " There be two sorts of ambiguities of words, the one is *ambiguitas patens*, and the other *latens*. *Patens* is that which appears to be ambiguous upon the deed or instrument, *latens* is that which seemeth certain and without ambiguity for anything that appeareth upon the deed or instrument, but there is some collateral matter out of the deed that breedeth ambiguity."

The illustration given by Lord Bacon of a latent ambiguity is thus, "If I grant my manor of S. to J. F. and his heirs, here appeareth no ambiguity at all. But if the truth be that I have the manors both of South S., and North S., this ambiguity is matter of fact, and therefore it shall be holpen by averment whether of them it was that the party intended should pass."

In *Cheyney's case*, 4 Coke's Rep., 68, the rule upon this subject, as well as the nature of the question arising under it, and its application, are very clearly stated and illustrated. The case given in illustration is thus, " A man devises his land, by his will, in writing, to his son John, generally, and dies. It turns

out in fact, that at the time of making his will he had 'two sons, both baptized by the name of John. It is now apparent that although the terms of the will are clear and plain, an ambiguity has arisen as to the person to whom they were intended by the testator to apply. Coke says that in such case he shall have the land whom the father intended to advance with it, and that the younger son may, in pleading or evidence, allege the devise to him ; and if it be denied, he may produce witnesses to prove his father's intent, and that the father thought the other to be dead, or that at the time of the will made, he named his son John, the younger, and the writer left out the addition of younger. And if it cannot be proved whom the father did intend, the will is void for uncertainty."

*Woodbury, J.,* in *Claremont* v. *Carlton,* 2 N. H. Rep., 369, puts a case of a latent ambiguity thus : " The identical monument or boundary referred to in a deed is always a subject of parol evidence, and when disputed it is always left to the jury to say which was the actual monument intended. Thus there may be two trees of a similar species, and with similar marks ; two similar stakes not far distant from each other, or two rivers of the same name ; and which was intended by the deed would be settled by parol evidence, on the ground that it is a latent ambiguity."

*Bartlett* v. *the Town of Nottingham,* 8 N. H. Rep., 300, was an action commenced by the plaintiff to recover compensation for services rendered for the defendants, at the request of one Joseph Cilley, in procuring a discontinuance of a highway laid out in said town.

On the twelfth of March, 1833, Cilley was appointed agent of the town to defend against the petition upon which the road was afterwards laid out in January, 1834.

In March, 1834, it was voted that the selectmen be the agents of the town for the ensuing year.

At a town meeting, in December, 1834, the town voted to discontinue the highway, and to authorize " *the agent* " to petition the court of common pleas for their consent. Upon this vote, Cilley took measures to procure said assent, and employed

.the plaintiff in the business. It was submitted to the jury to determine, upon this evidence, whether the term "the agent," contained in the vote of December, 1834, referred to Cilley or to the selectmen of the town.

The question, upon the case, was whether it was properly submitted to them to determine that fact.

In reference to the question arising upon the above facts, Mr. Chief Justice *Richardson* used the following language, viz: " It is well settled that where the extrinsic evidence introduced to show the particular subject matter to which the terms of the deed refer, shows only one subject to which the terms can be fairly applied, no parol evidence is admissible to enlarge, or restrain the unambiguous and intelligible terms used, or to explain the intention of the parties to the instrument.

But it sometimes happens that when the terms of an instrument are in themselves unambiguous, oral, extrinsic evidence becomes necessary for the purpose of ascertaining the particular subject matter to which they relate, and although the terms are clear and distinct, it happens in some cases that the objects to which they relate are not equally clear and certain, but even two or more objects may and are found to exist to which the terms may be properly applicable. In such a case arises what is termed a latent ambiguity."

In the deed of mortgage under consideration the property is described to be " the following goods and chattels now in and about the paper mill in Alstead, occupied by me, &c., viz: one paper-machine, sizer, dryer, cutter and all apparatus thereto belonging," &c., &c.

It was shown in evidence that there is an instrument attached to a paper machine, called a cutter; also that there is a machine or instrument used in paper mills which is not attached to the paper machine called a rag-cutter, and that there was such an instrument in said paper-mill at the date of the mortgage, and that said instrument is sometimes called also a cutter. Upon this showing then, here were two instruments called and known by the name of cutter, one of which was also known by the name of rag-cutter.

Now we think the terms of the deed are properly applicable to each of those instruments, both of which were called cutters, and both of which were in the mill.

If but one of them had been found in the mill no doubt would exist, we think, that by the description in the deed the one so found would have passed by it.

The cutter attached to the paper machine, if that had been the only cutter in the mill, would undoubtedly have passed under the terms used, if not as a part of the paper machine itself. And we think also that under the circumstances supposed, the rag-cutter would have passed by the terms of the deed, inasmuch as the instrument was called and known by the name of cutter as well as by the name of rag-cutter, and was in the mill at the date of the deed. In such a case what doubt could exist, viewing the question in the light afforded by the deed and surrounding circumstances, that by the term cutter was intended rag-cutter, or the instrument sometimes or more generally called by that name, and yet called also and known by the name of cutter, and that if no other cutter had been in the mill at the time it would have passed? Here then, we think, was a clear case of latent ambiguity; and according to the whole current of authorities, both in England and in this country, the parol evidence offered in the case was admissible to show which of the two cutters was intended by the parties. The rag-cutter was therefore sufficiently described in the mortgage deed to Page, and was well conveyed thereby.

It is further claimed on the part of the defendants that the machines in question were conveyed to the Cheshire bank by Walter Tufts, by his mortgage deed of the paper mill, of January 9th, 1844. It is not doubted, that if the machines were conveyed by that deed to the bank, they afterwards became the property of the defendants by the subsequent conveyances mentioned in the case. The machines are alleged to have been fixtures, and to have passed as a part of the freehold, or as an appurtenance of it. The question then to be decided is whether the machines in question are to be regarded as fixtures annexed to the freehold, and so a part of the real estate, or are to be

deemed mere personalty as between the parties to the mortgage.

It would seem now to be fully settled, in this State and elsewhere, that the strict rule that has been applied in England, (17 Taunt., 191, and 3 East., 38,) as between heir and executor, in determining what are fixtures attached to the freehold, is applicable also as between vendor and vendee, and mortgager and mortgagee. *Kittridge* v. *Woods*, 3 N. H. Rep., 503 ; 12 do., 205, 232, and authorities cited. It was sometime since decided in England, that in general, as between persons holding the relation of heir and executor, whatever is connected with the freehold and annexed to it, and is necessary to its enjoyment and profitable use, shall go to the heir. *Lawton* v. *Salmon*, (Easter, 22 Geo. III.,) reported in 1 H. Black., 259, note. That was the case of salt pans fixed in salt works by the ancestor and fastened by mortar to a brick floor. The case of mill stones fixed to the mill is a case similar in principle, and is put by Ch. Baron *Comyns* as the case of a fixture belonging to the heir, and not the executor. Comyns Dig. *Biens* B. The general rule as established by the authorities upon this subject is laid down in the case of the *Despatch Line of Packets* v. *Bellamy Man. Co.*, 12 N. H. Rep., 233. It is stated thus : "Machines and other articles essential to the occupation of a building, or to the business carried on in it, and which are affixed or fastened to the freehold, and used with it, partake of the character of real estate, become part of it, and pass by a conveyance of the land." The authorities in support of the rule thus stated are there very fully cited, and a repetition of them here would be a work of supererogation. This general rule is recommended both by its reasonableness, and its manifest propriety and utility, and has the sanction of a great weight of authority.

Lord *Mansfield* stated the reasons and grounds of the opinion in *Lawton* v. *Salmon*, before cited, as follows : "The present case is very strong. The salt spring is a valuable inheritance, but no profit comes from it unless there is a salt work, which consists of a building, &c., for the purpose of containing the pans, &c., which are fixed to the ground. The inheritance

cannot be enjoyed without them; they are accessories, necessary to the enjoyment and use of the principal. The owner erected them for the benefit of the inheritance. He could never mean to give them to the executor and put him to the expense of taking them away without any advantage to him who could only have the old materials or a contribution from the heir in lieu of them. But the heir gained eight pounds per week by them. On the reason of the thing, therefore, and the intention of the testator, they must go to the heir. Every reason there urged, and every ground stated by Lord Mansfield, in support of the judgment in that case, is equally applicable in the case under consideration. This was a paper-mill. The building was erected to cover and protect the machinery, and enable the owners to operate it in the business of paper-making. Without the machinery, the business could not be carried on successfully; nor could the anticipated benefits of the paper-mill be enjoyed, or its profits be realized.

In the deed of Tufts to the bank the premises were described as certain land, " with the paper-mill," &c., thereon, and " water privilege appurtenant," &c., together " with all its privileges and appurtenances," `&c. A building could hardly be properly denominated a " paper-mill," that should contain no machinery for the manufacture of paper. The building, in common understanding, would seem to be only one of the constituent parts of such a mill; while the machinery would be necessary to fill up and complete the idea.

The facts respecting the machines in question, stated in the case, clearly shew them to have been fixtures within the plain general rule laid down in the case of the *Despatch Line of Packets* v. *Bellamy Man. Co.*, before cited. The machines were essential to the useful occupation of the building, and to the business carried on in it, and were affixed and fastened to the freehold, and used with it, and were in use in connection with it at the time of the mortgage; moreover, the machines were clearly affixed for permanent use, and that is sufficient, according to many cases, even though the affixing had been slight. *Walker* v. *Sherman*, 20 Wend., 653.

VOL. XXIII. 9

The character of the fastening, such as it is shown to be, furnishes no objection to considering the machines as fixtures. It is said, in the case last cited, from 12 N. H. Rep., 233, that the character of the fastening, as being slight or otherwise, "is a criterion of a questionable character, not sustained by the weight of the decisions ; more depends on the nature of the article and its use, as connected with the use of the freehold."

It is, however, necessary that machines or other articles, should, in some way, have been connected with the realty, or have been so placed, that the removal of them would involve either the destruction, or impairment, or substantial injury of the freehold, in order that the same should be regarded as constituting a part of it. Mere loose, movable machinery, in no way attached or affixed, is not to be regarded as a part of the real estate, even though it be used in connection with the freehold, and in the promotion of the business to which it is appropriated. 9 East., 215 ; *Horne* v. *Baker*, 20 Wend. Rep., 636 ; *Walker* v. *Sherman*, 6 Cowen, 663 ; *Miller* v. *Plumb*, 12 N. H. Rep. 234.

This view, however, does not conflict with the rule that is so well settled, that some things, which have been attached to the freehold, but which are detached for a temporary purpose, or by accident, are still, nevertheless, constructively attached, and are of the freehold and appurtenances to it. A mill-stone detached to be picked, (Amos & Fer. on fixtures, 183,) and the stones and irons of a grist-mill removed by a flood, (*Goddard* v. *Bolster*, 6 Greenl. Rep., 427,) are of the class mentioned, and still belong to the freehold. *Walker* v. *Sherman*, 20 Wend., 636.

The case of *Miller* v. *Plumb*, before cited, goes far in its principles to decide, and is much in point to show that the machines in question, are to be regarded as fixtures, and passed by the mortgage deed to the bank.

Upon the whole, we are of the opinion that the machines in question were a part of the freehold, and as such, passed by the deed of Tufts to the Cheshire bank, on the ninth of January, 1844 ; and that upon this ground, as well as that before stated,

the verdict in this case must be set aside, and that there must be

*Judgment for the defendants.*